## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>_Plaintiff,_<br><br>v.<br><br>AT&T INC., DIRECTV GROUP HOLDINGS, LLC, and TIME WARNER INC.,<br><br>_Defendants._ | Case No. 1:17-cv-02511-RJL |

## THIRD-PARTY TWENTY-FIRST CENTURY FOX, INC.'S
## MOTION TO AMEND THE PROTECTIVE ORDER

Third-party Twenty-First Century Fox, Inc. ("Fox"), by and through its undersigned counsel, respectfully moves to amend the Protective Order in this matter. Fox is a non-Party Protected Person as that term is used in Paragraph B(2) of the Protective Order and seeks additional protection from the Court for its Confidential Information. Fox's Confidential Information appears in Investigation Materials produced by Fox to the Plaintiff, as well as in Investigation Materials that Fox understands have been produced by other non-Parties to the Plaintiff. In support of this motion, Fox submits the accompanying Memorandum of Law of Third-Party Twenty-First Century Fox, Inc.'s Motion to Amend the Protective Order, dated December 15, 2017.

Dated: December 15, 2017
       Washington, D.C.

Respectfully submitted,


*/s/  Kenneth S. Reinker*
Kenneth S. Reinker (D.C. Bar # 999958)
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
T: 202-974-1500
F: 202-974-1999

Attorneys for Third-Party
    *Twenty-First Century Fox Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA,

        *Plaintiff*,

    v.

AT&T INC., DIRECTV GROUP
HOLDINGS, LLC, and TIME WARNER
INC.,

        *Defendants.*

Case No. 1:17-cv-02511-RJL

---

**MEMORANDUM OF LAW IN SUPPORT OF
THIRD-PARTY TWENTY-FIRST CENTURY FOX, INC.'S
MOTION TO AMEND THE PROTECTIVE ORDER**

Twenty-First Century Fox, Inc. ("Fox") is not a party to this litigation, yet faces severe competitive harm to its business from the potential disclosure of highly competitively sensitive information to the Defendants, which are the largest distributor of Fox's programming (AT&T/DirecTV) and a significant competitor in programming (Time Warner). This highly competitively sensitive information, which Fox provided to the Department of Justice ("DOJ") in response to a DOJ Civil Investigative Demand ("CID"), includes in particular Fox's agreements with every major distributor of its television networks, as well as detailed data on revenue, pricing, and subscribers on a distributor-by-distributor basis. Fox understands that many of its distributors also produced these same agreements to the DOJ in response to CIDs.

Fox appreciates the Court having limited disclosure only to outside counsel. However, Fox remains concerned that its highly confidential information might be inadvertently disclosed or misused, potentially harming both Fox and competition in the marketplace generally.

Notably, Time Warner itself recently intervened in an antitrust case to prevent a distributor, Cablevision, from producing these exact types of agreements to outside counsel for a significant programming competitor, Viacom.  Time Warner explained that these types of agreements were highly competitively sensitive, that they were unnecessary for the lawsuit, and that limiting access to only outside counsel did not provide enough protection.  *See* Third-Party Content Providers' Opp'n to Viacom Int'l Inc. & Black Entm't Television, LLC's Mot. To Compel, ECF No. 108-1, *Cablevision Sys. Corp. v. Viacom Int'l Inc.*, No. 1:13-cv-01278-LTS-JLC (S.D.N.Y. July 23, 2015).  (Attached as Exhibit A-1.)  Time Warner similarly objected to providing these types of agreements, notwithstanding a protective order, in the Federal Communication Commission's review of the Comcast-Time Warner Cable merger, objections that the D.C. Circuit sustained.  *See CBS Corp. v. FCC*, 785 F.3d 699 (D.C. Cir. 2015).

To mitigate Fox's concerns here and limit the risk of inadvertent disclosure or misuse, Fox respectfully asks that reasonable additional protections that are standard in many protective orders and non-disclosure agreements be added to the Protective Order.[1]

1.  Fox should be permitted to withhold from production its highly competitively sensitive material that is not necessary or relevant for this litigation or, at a

---

[1] On Dec. 13 and Dec. 14, 2017, Fox and the parties held meet-and-confers but did not reach agreement.

Fox is aware of the Special Master's report in the Aetna-Humana merger rejecting UnitedHealth's request for additional protections for its confidential information.  Special Master Report and Recommendation No. 2, *United States v. Aetna Inc.*, No. 1:16-cv-01494 (JDB), 2016 WL 8738421, at *6 (D.D.C. Sept. 14, 2016).  But that recommendation is not binding on this Court, and a different conclusion is warranted here, including because of the significant competitive harm that would result from disclosing Fox's confidential information; the fact that this merger involves both Fox's largest distributor (AT&T/DirecTV) and a significant programming competitor (Time Warner), resulting in myriad ways that Fox's confidential information could be used to harm both Fox and competition in the marketplace generally; and

minimum, to have an opportunity to redact highly competitively sensitive terms such as pricing prior to production.

2. Prior to production, the Defendants should provide Fox with a list of the specific names and affiliations of the individuals that would have access to Fox's confidential information.  Fox should be given a reasonable opportunity to object to any specific individual who might present a particularized concern.

3. Individuals that access Fox's confidential information should be required to observe a two-year "cooling off" period during which they cannot be involved in any other matter that involves Fox (absent Fox's consent).

These objections and requests apply both to confidential information in Fox's own productions and to Fox's confidential information that Fox understands was produced by third-party distributors.  As required by the Protective Order, Fox's objections and requests should be resolved before the DOJ provides any of Fox's confidential information to the Defendants, including Fox's information in other third-party productions.

Fox's proposed Amended Protective Order is submitted as Exhibit B, as a redline showing Fox's proposed changes against the current Protective Order.

## I. This Information Is Highly Confidential and Its Disclosure Would Harm Fox

Fox is an international media company that, among other things, creates content such as films and television shows and operates television networks and television stations.  Most relevant here, Fox licenses its television networks and its owned and operated television stations

---

the refusal of Time Warner in a recent antitrust litigation to produce exactly this type of information to outside counsel for exactly the reasons raised by Fox here.

to AT&T/DirecTV, which is the largest U.S. Multichannel Video Programming Distributor ("MVPD") and the largest distributor of Fox's television content. Fox also competes with Time Warner in the creation, licensing, and sale of film and television content and networks.

In response to the DOJ's CID, Fox produced a large number of distribution, affiliation, and retransmission consent agreements between Fox and its distributors. These agreements govern how distributors make Fox's content available on their cable systems, satellite systems, and other distribution platforms. These agreements are heavily negotiated and extremely complex, often containing hundreds of pages of detailed terms. They contain highly sensitive information central to Fox's business, including pricing, carriage terms, and many other commercial terms that govern how Fox's content reaches consumers. These agreements include stringent mutual confidentiality provisions that prevent either party from disclosing any of their terms to third parties. They also often limit access even within Fox and the distributor. Fox subjects these agreements to strict internal controls, with only a limited number of Fox's employees, legal advisors, and consultants permitted access and only for limited purposes. Fox similarly expects its distributors to use strict internal controls to protect these agreements.

Disclosing the terms of Fox's agreements with other distributors to AT&T/DirecTV would severely disadvantage Fox in future negotiations. Fox's negotiations with AT&T/DirecTV are among the most critical at the company given that AT&T/DirecTV is Fox's largest distributor. The contract between Fox and AT&T/DirecTV is complex, involves hundreds of millions of dollars, governs their relationship over a multi-year period, and governs how Fox's content will reach AT&T/DirecTV's tens of millions of subscribers. If AT&T/DirecTV were to learn the details of Fox's contracts with other distributors — which are competitors to AT&T/DirecTV — that would reduce competition. AT&T/DirecTV could use

that information to negotiate pricing and other terms that are less favorable to Fox. AT&T/DirecTV could also use this information about the terms that competing distributors have negotiated with Fox to gain an advantage in its negotiations with other programmers.

Similarly, if Time Warner were to learn the terms of Fox's agreements, it would gain a significant advantage. In negotiations with distributors, information on Fox's terms would enable Time Warner to insist on superior terms, placing it at a competitive advantage over Fox. In negotiations with rights holders and content creators, information on Fox's terms with distributors would give Time Warner insight into how Fox would compete for those rights, such as insight into how much Fox could afford to pay, again giving it a competitive advantage.

Beyond contract negotiations, disclosure of Fox's highly confidential information would also give the Defendants an advantage in strategic matters, such as future potential corporate transactions, strategies for developing and licensing content, and developing new ways to reach consumers and improve the viewing experience.

The potential harm from inadvertent disclosure and misuse also extends beyond the Defendants themselves. If Fox's information were inadvertently disclosed, it might be disclosed not only to Defendants, but also potentially to others in the media industry — such as other distributors or content companies — thus threatening additional harm to Fox and competition in the marketplace generally. In particular, many of the outside counsel and other individuals involved in this matter regularly work with other companies in the industry, exacerbating the risk that information could be inadvertently disclosed or misused in other contexts.

There should be no dispute that this information is highly confidential and that disclosure would severely harm Fox. The D.C. Circuit has recognized the sensitivity of these materials and the potential for competitive harm from disclosure. *See CBS Corp. v. FCC*, 785 F.3d 699 (D.C.

Cir. 2015).  Moreover, as noted above, Time Warner acknowledged as much in recent antitrust litigation involving Cablevision and Viacom, where Time Warner refused to produce its agreements with distributors.  A senior Time Warner executive explained that these agreements are "among the most closely guarded, strategic business information," that Time Warner "prohibit[s] Distributors from disclosing to third parties the terms of those agreements," and that Time Warner only discloses its agreements to its own employees if they have "a business reason to have knowledge of their contents."  Decl. of Richard J. Warren at 3, ECF No. 110-8, *Cablevision Sys. Corp. v. Viacom Int'l Inc.*, No. 1:13-cv-01278-LTS-JLC (S.D.N.Y. July 23, 2015).  (Attached as Exhibit A-2.)  Time Warner's executive further explained that production of these agreements — which there, as here, would have been only to outside counsel — threatened "significant and irreparable harm," including because "Distributors would have knowledge concerning the exact terms that were included in the affiliate agreements with Cablevision and the manner in which they were negotiated and thus would have an unfair advantage in negotiating the terms of their own agreements with TBS, Inc."  *Id.* at 4-5.

## II. Limiting Disclosure to Outside Counsel Does Not Fully Address These Concerns.

Fox appreciates that the Court has limited access to these materials to only outside counsel.[2]  However, that does not resolve Fox's concerns.

Fox's concerns are not based on questioning the integrity of outside counsel.  Instead, "[t]he issue concerns not good faith but risk of inadvertent disclosure."  *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).  If information is inadvertently disclosed, it cannot be

---

[2] The Protective Order leaves open the possibility for Defendants to petition the Court to allow disclosure of confidential information to in-house counsel.  Protective Order ¶E(2).  If that were to occur, Fox would have even more significant concerns and would object.

undisclosed.  Thus, given the competitive sensitivity of the information involved here, the utmost

protections and caution are needed.  Outside counsel also cannot unlearn Fox's confidential

information or "lock-up trade secrets in [their] mind, safe from inadvertent disclosure."  *Brown

Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992).  Thus, if the outside

counsel here became involved in a future matter involving Fox, they would have the benefit of

knowing Fox's confidential information and could potentially use it to Fox's detriment.

Time Warner has recognized that limiting disclosure to outside counsel is insufficient to

protect this type of information.  In *Cablevision v. Viacom*, Time Warner explained that a

protective order limiting production to outside counsel who were not involved in competitive

decision-making was inadequate because, among other things, the provisions were too difficult

to enforce, it would be essentially impossible to detect and cure violations, the provisions did not

prohibit outside counsel from providing antitrust or litigation advice, and the provisions did not

apply to other lawyers at the same firms or other individuals involved in the litigation (*e.g.*,

experts and vendors).  *See* Third-Party Content Providers' Opp'n to Viacom Int'l Inc. & Black

Entm't Television, LLC's Mot. To Compel, ECF No. 108-1, *Cablevision Sys. Corp. v. Viacom

Int'l Inc.*, No. 1:13-cv-01278-LTS-JLC (S.D.N.Y. July 23, 2015), at 14-18.  So too here.

Fox's concerns are heightened because outside counsel here regularly advise AT&T,

Time Warner, and others in the media industry, including on matters where Fox is on the other

side of the bargaining table.  Courts have recognized that limitations on outside counsel are

especially appropriate when the outside counsel "regularly represent[]" the client in other highly

sensitive commercial matters.  *See Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d

1325, 1346 (7th Cir. 1986) (prohibiting outside counsel for hospitals that sued an insurer and

"regularly represented [the hospitals] in price negotiations" from accessing confidential material

unless the outside counsel agreed not to represent the hospitals in other matters involving the insurer for 18 months). Again, Fox is not questioning the integrity of the outside counsel here, but the reality is that inadvertent disclosure could occur and these outside counsel cannot simply forget what they have learned in this matter. For example, both O'Melveny & Myers LLP and Gibson Dunn & Crutcher LLP are law firms with substantial entertainment and media law practices; Gibson Dunn has represented AT&T in a number of matters, including AT&T's acquisition of DirecTV and the DOJ's antitrust case against DirecTV for sharing information with other distributors; meanwhile, Cravath Swaine & Moore LLP has represented Time Warner for decades in significant corporate matters, including matters opposite Fox, such as Fox's proposed merger offer in 2014 as well as Time Warner's investment in Hulu, which Fox partially owns, in 2016. The Protective Order currently would permit all employees at those firms to access Fox's confidential information, without any limitation on the number or identity of those individuals and without regard to whether they legitimately need to access the information.

## III. Reasonable Additional Protections Would Help Mitigate These Concerns

To mitigate the concerns about inadvertent disclosure or misuse, Fox respectfully requests reasonable additional limitations to the Protective Order. These limitations are similar to the limitations found in many protective orders and non-disclosure agreements.

*First*, Fox should be permitted to withhold from production highly competitively sensitive material that is not necessary or relevant for the litigation of this matter or, at a minimum, to have an opportunity to redact certain highly competitively sensitive terms such as pricing prior to production. When discovery involves highly confidential information of a non-party and where disclosure would be harmful, discovery is inappropriate unless it is necessary

for the case. *See, e.g.*, Fed. R. Civ. P. 45(d)(3)(B)(i) (authorizing courts to quash or modify subpoenas that would involve "disclosing a trade secret … or other commercial information"); *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991) ("If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed."); *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998) (explaining that the party seeking discovery of highly confidential information must demonstrate that the information is both "relevant and necessary").

Here, there has been no demonstration that the production of any of Fox's highly competitively sensitive information is relevant and necessary or that whatever legitimate needs the parties might have for information about other programmers can only be satisfied with confidential information.  Especially given that the DOJ's complaint is based on the theory that AT&T would harm competing distributors by withholding Time Warner content, it is unclear why the parties would need access to all of the specific competitively sensitive details contained in the contracts of other programmers.  Before requiring this intrusive disclosure, the parties should be required to demonstrate that access to this highly competitively sensitive information is necessary to litigate the case and that they cannot rely on other sources of information that would not require disclosure of critical trade secrets.  For example, third parties such as SNL Kagan and Nielsen provide significant information on programming, including ratings, demographic information, revenue and subscriber estimates, etc., that very well might provide the parties with the information needed while avoiding harm to Fox or competition.

At a minimum, even if the parties were able to demonstrate a "substantial need … that cannot be otherwise met" for Fox's confidential material, Fox should be permitted to redact

highly competitively sensitive information, such as pricing, before production. *See* Fed. R. Civ. P. 45(d)(3)(C)(i) (providing that where litigants can demonstrate "a substantial need for the testimony or material that cannot be otherwise met" a court can order production of trade secrets under "specified conditions"). The parties have no entitlement to unnecessary information from third parties, especially when there are compelling reasons not to provide it. *See, e.g.*, Order Adopting in Part Report and Recommendation, *In re Takata Airbag Prods. Liab. Litig.*, No. 15-2599-MD-MORENO, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) ("[A] party is not entitled to receive every piece of relevant information. It is only logical, then, that a party is similarly not entitled to receive every piece of irrelevant information in responsive documents if the producing party has a persuasive reason for why such information should be withheld."). Here, allowing redaction of the most highly competitively sensitive terms would help address Fox's concerns, while accommodating the legitimate needs that the parties might have.

Fox is willing to work promptly with the parties to identify what information they legitimately need for the litigation and to agree on what information should be produced and in what format. This process would not create undue burden. The contracts, data, and other materials that contain this highly competitively sensitive information are a discrete set of identifiable materials. The confidentiality concerns raised by Fox are legitimate and significant, as Time Warner itself has acknowledged. A short period to resolve Fox's objections and to identify what the parties need would not prejudice the parties in any meaningful way, especially because, as noted, these materials seem to be of secondary importance at best.

*Second*, regardless of whether Fox is permitted to withhold or redact its most highly competitively sensitive materials, the Protective Order should be amended to require that the Defendants provide Fox with a list of each individual that would have access to Fox's

confidential information and their affiliations.  Fox should then be given a reasonable

opportunity to object to any specific individual who might present a particularized concern.  This

requirement would aid in enforcing the Protective Order and, if necessary, in identifying possible

violations.  This requirement also would encourage the Defendants to carefully consider in

advance how broadly Fox's confidential information needs to be disseminated and to limit

disclosure only to an appropriately narrow set of individuals.  Put simply, the fewer people with

access to the confidential information, the easier it would be to determine where a disclosure

occurred so that appropriate steps could be taken in response.  This requirement also would help

to remind individuals of the importance of their obligations under the Protective Order.

     *Third*, any individuals that access Fox's confidential information should be required to

observe a two year "cooling-off" period during which they cannot be involved in any other

matter that involves Fox (absent Fox's consent).  This two-year period is modest and the bare

minimum necessary given that distribution agreements are long-term and each new deal is

intimately related to the last.[3]  This requirement again would encourage the Defendants to limit

the disclosure to only those individuals who truly need to know it for litigating this case.


**Conclusion**

     For all these reasons, Fox respectfully requests that the Court amend the Protective Order

as follows and as reflected in the proposed Amended Protective Order submitted as Exhibit B:

---

[3] Notably, in *Cablevision v. Viacom*, Time Warner objected that a two year "cooling-off" period for outside counsel was insufficient given the long-term nature of these agreements.  *See* Third-Party Content Providers' Opp'n to Viacom Int'l Inc. & Black Entm't Television, LLC's Mot. To Compel, ECF No. 108-1, *Cablevision Sys. Corp. v. Viacom Int'l Inc.*, No. 1:13-cv-01278-LTS-JLC (S.D.N.Y. July 23, 2015), at 15-16.

1. Fox should be permitted to withhold from production its highly competitively sensitive material that is not necessary or relevant for this litigation or, at a minimum, to have an opportunity to redact highly competitively sensitive terms such as pricing prior to production.

2. Prior to production, the Defendants should provide Fox with a list of the specific names and affiliations of the individuals that would have access to Fox's confidential information.  Fox should be given a reasonable opportunity to object to any specific individual who might present a particularized concern.

3. Individuals that access Fox's confidential information should be required to observe a two-year "cooling off" period during which they cannot be involved in any other matter that involves Fox (absent Fox's consent).

These objections and requests apply both to confidential information in Fox's own productions and to Fox's confidential information that Fox understands was produced by third-party distributors.  As required by the Protective Order, Fox's objections and requests should be resolved before the DOJ provides any of Fox's confidential information to the Defendants, including Fox's information in other third-party productions.

Dated: December 15, 2017
      Washington, D.C.

Respectfully submitted,


/s/ Kenneth S. Reinker
Kenneth S. Reinker (D.C. Bar # 999958)
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
T: 202-974-1500
F: 202-974-1999

Attorney for Third-Party
    *Twenty-First Century Fox, Inc.*

CERTIFICATE OF SERVICE

I, Olena Penn, docket clerk at the Washington office of Cleary Gottlieb Steen &

Hamilton LLP, hereby certify that on December 15, 2017, a true and correct copy of the

foregoing Third-Party Twenty-First Century Fox, Inc.'s Motion to Amend the Protective Order

was served via CM/ECF upon the following counsel of record:

Katrina M. Robson
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Email: krobson@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067
Email: dpetrocelli@omm.com

M. Randall Oppenheimer
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067
Email: roppenheimer@omm.com

Michael L. Raiff
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
Email: mraiff@gibsondunn.com

Robert C. Walters
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
Email: rwalters@gibsondunn.com

Christine Anne Varney
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Email: cvarney@cravath.com

Julie A. North
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Email: jnorth@cravath.com

Kevin J. Orsini
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Email: korsini@cravath.com

Margaret Segall D'Amico
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Email: mdamico@cravath.com

Peter T. Barbur
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
pbarbur@cravath.com

and via first-class U.S. mail upon the following party:

CARTER PAGE
590 Madison Avenue
21st Floor
New York, NY 10022

Dated: December 15, 2017                    By: _____Olena_____