**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | FEB 2 0 2018 |
| Plaintiff, | ) | Clerk, U.S. District & Bankruptcy |
| | ) | Courts for the District of Columbia |
| v. | ) | Civil Case No. 17-2511 (RJL) |
| | ) | |
| AT&T INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**
(February **20**, 2018)

On November 20, 2017, the United States, acting through the Department of Justice's Antitrust Division ("plaintiff" or "the Government"), brought this action to enjoin the merger of defendants AT&T/DirecTV and Time Warner (collectively, "defendants") under Section 7 of the Clayton Act, 15 U.S.C. § 18. *See generally* Compl. [Dkt. # 1]. In answering the complaint, defendants raised the defense that plaintiff's claim "reflects improper selective enforcement of the antitrust laws." Answer 28 [Dkt. # 20]. Specifically, defendants assert that the challenge to their vertical merger was brought not due to any credible antitrust concerns, but because one of the Time Warner networks to be acquired, CNN, has engaged in political speech disfavored by President Trump. *See, e.g.*, 2/16/2018 Hr'g Tr. ("Hr'g Tr.") 35:12-24 [Dkt. # 67].

In December 2017, defendants asked plaintiff to produce discovery relating to their "selective enforcement" defense. *Id.* at 21:12. In particular, defendants have asked plaintiff to compile and produce summary documents, known as privilege logs, cataloguing

the existence (but not the contents) of certain written and oral communications regarding the White House's views of the proposed AT&T-Time Warner merger. Plaintiff has completed and produced one such log setting forth a list of "all written communications between the White House and the Antitrust Division that relate to the subject of th[e] merger." *Id.* at 39:21-40:2. Although that log apparently indicates that there were no "untoward" communications between the White House and the Antitrust Division, *id.* at 41:4, defendants, through document requests and interrogatories, have asked plaintiff to produce similar logs listing: 1) all written "communications between the Antitrust Division and the Attorney General's Office" in which "the White House['s] views are expressed about the merger," *id.* at 55:5-8; 2) all written communications and documents "between the Attorney General's Office and the White House about this merger," *id.* at 55:12-14; and 3) all "oral communications between the White House and the Antitrust Division with regard to the AT&T merger," *id.* at 46:8-9, 19-20; *see also id.* at 56:7-10. Plaintiff objects to providing any of that information. That brings us to the dispute currently before the Court.

By joint letter dated February 13, 2018, the parties, in accordance with the procedures established in the Case Management Order [Dkt. # 54], informed the Court that they were at an impasse in their negotiations over defendants' entitlement to the requested privilege logs. The parties explained their dispute at a status hearing held on February 16, 2018. On the one hand, defendants assert that they are entitled to the requested privilege logs because those logs are relevant to their selective enforcement defense. Accordingly, defendants ask that this Court require plaintiff to compile and turn over privilege logs that

are responsive to the outstanding discovery requests. *See* Hr'g Tr. 55:5-56:23. Plaintiff, for its part, argues that defendants have failed to establish their right to discovery on the issue of selective enforcement. *See id.* at 59:1-16. Plaintiff has moved to strike defendants' selective enforcement defense as well as to quash any outstanding discovery requests related to that defense. *See id.* at 60:4-9.

With the trial date in this case fast approaching, all agree that we cannot afford to spend much of the little remaining preparation time litigating this matter. Even without the luxury of back-and-forth briefing, however, the parties, through arguments of able counsel, have made their positions clear. Both sides acknowledge that the Supreme Court's decision in *United States v. Armstrong*, 517 U.S. 456 (1996), controls the analysis of defendants' entitlement to additional selective enforcement discovery. *See* Hr'g Tr. 11:11-18, 21:23-24. Thus, the issue here is whether defendants have satisfied *Armstrong*'s requirements. For the reasons discussed below, I conclude they have not.

As our Circuit has often recognized, "[p]rosecutors have broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (citing *Armstrong*, 517 U.S. at 464). To be sure, defendants are correct that Executive Branch enforcement decisions are "subject to constitutional constraints," including a prohibition on selectively prosecuting individuals for exercising their constitutional rights. *Armstrong*, 517 U.S. at 464 (internal quotation marks omitted); *see Att'y Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 932, 935 & n.11 (D.C. Cir. 1982). But the Supreme Court has emphasized that court orders allowing discovery into the exercise of prosecutorial discretion—just as

those resolving the merits of a selective enforcement claim—raise a number of "substantial concerns." *Wayte v. United States*, 470 U.S. 598, 607 (1985); *see Armstrong*, 517 U.S. at 468. Those concerns range from a recognition of the judiciary's inability to competently assess the basis for a decision to prosecute, to the threat that courts may "unnecessarily impair" the Executive Branch's performance of a "core" constitutional function, to the practical fact that selective enforcement discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." *Armstrong*, 517 U.S. at 465, 468.

For those reasons, the Supreme Court and our Circuit have established a "rigorous standard" that defendants must meet before even obtaining discovery on a selective enforcement defense. *Id.* at 468. Under that standard, defendants must put forward "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect *and* discriminatory intent." *Id.* (emphasis added) (internal quotation marks omitted); *see Irish People*, 684 F.2d at 932. "If either part of the test is failed, the defense fails," meaning that defendants cannot "subject[] the Government to discovery" unless they make a colorable showing that this enforcement action was in fact selective. *Irish People*, 684 F.2d at 947; *see Armstrong*, 517 U.S. at 469-70. They cannot do so here.

Defendants have fallen far short of establishing that this enforcement action was selective—that is, that there "exist persons similarly situated who have not been prosecuted." *Irish People*, 684 F.2d at 946; *see also id.* ("Discrimination cannot exist in a vacuum; it can be found only in the unequal treatment of people in similar circumstances."). As our Circuit has noted, defendants are "similarly situated" for purposes of a selective enforcement claim "when their circumstances present no

4

distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)).  It is therefore difficult to even conceptualize how a selective enforcement claim applies in the antitrust context, where each merger "must be functionally viewed" in "the context of its particular industry" and in light of a "variety of factors"—including the transaction's size, structure, and potential to generate efficiencies or enable evasion of rate regulation—that "are relevant in determining whether a transaction is likely to lessen competition." *United States v. Baker Hughes Inc.*, 908 F.2d 981, 985 (D.C. Cir. 1990) (internal quotation marks omitted); *see generally* Dep't of Justice & Fed. Trade Comm'n, Non-Horizontal Merger Guidelines (June 14, 1984).

As such, it is no surprise that defendants have mustered only one specific transaction—Comcast's 2011 acquisition of NBC Universal ("NBCU")—as the requisite comparator for their selective enforcement claim.  *See* Hr'g Tr. 30:7-32:21.  As plaintiff points out, however, the Antitrust Division *did file* a Section 7 enforcement action to enjoin the Comcast-NBCU transaction.  *See* Complaint, *United States v. Comcast Corp.*, No. 11-cv-106 (D.D.C. Jan. 18, 2011), ECF No. 1.  And although the Comcast-NBCU suit was resolved through a settlement, that settlement occurred in the context of "distinguishable legitimate prosecutorial factors," *Branch Ministries*, 211 F.3d at 145—including FCC oversight—not present here.  *See* Hr'g Tr. 12:22-13:22.  Defendants' attempt to use the Comcast-NBCU transaction as the basis for their selective enforcement claim is therefore

unavailing.[1]  The same goes for defendants' efforts to distinguish this enforcement action from the Government's treatment of vertical mergers generally.  As counsel for the Government explained at length during the hearing, history belies the notion that this action is the first and only time that the Government has found an antitrust problem with a proposed vertical merger or insisted on a structural remedy as a condition to settlement.  *See id.* at 13:23-16:1; *see also* Steven C. Salop & Daniel P. Culley, *Potential Competitive Effects of Vertical Mergers: A How-To Guide for Practitioners* app. (Dec. 8, 2014) (collecting vertical merger challenges from 1994-2013).[2]  So while it may, indeed, be a rare breed of horse, it is not exactly a unicorn!

For all of those reasons, defendants have not made a "credible showing" that they have been "especially singled out" by plaintiff.  *Armstrong*, 517 U.S. at 470; *Irish People*, 684 F.2d at 946.  On that basis *alone*, their request for additional selective enforcement discovery fails.  *See Irish People*, 684 F.2d at 947 (requiring a "colorable claim of both" selection and motivation "before subjecting the Government to discovery").[3]  As such, it follows that defendants are not entitled to an order compelling plaintiff's completion of

---

[1] In citing the Comcast-NBCU transaction as the basis for their selective enforcement claim here, defendants invite this Court to accept their premise that the Comcast-NBCU transaction "presented far more challenges" under the antitrust laws "than this merger present[s]."  Hr'g Tr. 30:11-12.  I decline the invitation, which at this juncture would require me to reach a conclusion about the merits of this case based simply on defendants' confidence in—rather than evidence of—their position.  Defendants will have ample opportunity to argue "how weak this case is," *id.* at 33:21-22, during the upcoming trial.

[2] This article is available at http://scholarship.law.georgetown.edu/facpub/1392.

[3] Having reached this conclusion, I "need not examine whether [plaintiff] was improperly motivated in undertaking" this action, *Branch Ministries*, 211 F.3d at 145, nor the dueling declarations and deposition testimony that both sides have proffered to support their respective positions on the motivation issue.

privilege logs responsive to defendants' outstanding selective enforcement discovery requests.  Therefore, for the foregoing reasons, it is hereby

**ORDERED** that defendants' oral motion to compel production of the requested privilege logs relating to their selective enforcement defense is **DENIED**; and it is further

**ORDERED** that plaintiff's oral motion to strike defendants' outstanding discovery and interrogatory requests for: 1) all written communications about the merger between the White House and the Attorney General's office; 2) all written communications about the White House's view of the merger between the Attorney General's office and the Antitrust Division; and 3) all oral communications between the White House and the Antitrust Division with regard to the AT&T merger is **GRANTED**.

**SO ORDERED.** [4]

RICHARD J. LEON
United States District Judge

---

[4] As discussed at the hearing, defendants, out of an abundance of caution, included Assistant Attorney General ("AAG") Makan Delrahim on their final fact witness list lest they be foreclosed from doing so later. *See* Hr'g Tr. 24:22-25:1.  However, based on follow up discussions between the Court and counsel on both sides during our last hearing, the Court is now proceeding on the belief that AAG Delrahim will be stricken from the list, subject to the general right—available to both sides—to seek leave to amend the witness list upon a showing of good cause. *See id.* at 36:17-37:4.