# EXHIBIT 2

```
                                                              1

             IN THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF COLUMBIA


       ----------------------------X

       UNITED STATES OF AMERICA,

                    Plaintiff,

              v.                        Case No.
                                        1:17-cv-02511

       AT&T INC., DIRECTV GROUP

       HOLDINGS, LLC, and

       TIME WARNER INC.,

                    Defendants.

       -----------------------------X

           CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

              VIDEOTAPED DEPOSITION OF JOHN STANKEY

                 AT&T ARBITRATION REMEDY 30(b)(6)

                         Dallas, Texas

                       FEBRUARY 16, 2018

                          7:29 a.m.



       Reported by:
       April R. Brunson, CSR
       Job No. 53298-A
```

2

1          Friday, February 16, 2018

2          7:29 a.m.

3

4          Videotaped Deposition of JOHN

5   STANKEY, AT&T ARBITRATION REMEDY

6   30(b)(6), taken at the law offices of

7   Gibson Dunn & Crutcher, LLP,

8   2100 McKinney Avenue, Suite 1100,

9   Dallas, Texas, pursuant to Notice,

10  before April R. Brunson, Certified

11  Shorthand Reporter in and for the State

12  of Texas, commencing at 7:29 a.m.,

13  there being present:

14

15

16

17

18

19

20

21

22

23

24

3

```
 1      APPEARANCES:
 2
 3      On behalf of the United States:
 4      U.S. DEPARTMENT OF JUSTICE
 5      ANTITRUST DIVISION
 6      450 Fifth Street, N.W.
 7      Washington, D.C.  20530
 8      BY:  SAMER MUSALLAM, ESQ.
 9           samer.musallam@usdoj.gov
10           ERIC D. WELSH, ESQ.
11           eric.welsh@usdoj.gov
12           ANNA SALLSTROM
13           anna.sallstrom@usdoj.gov
14
15
16      On behalf of AT&T Inc., DirecTV Group
17      Holdings LLC, and Time Warner Inc.:
18      O'MELVENY & MYERS, LLP
19      1999 Avenue of the Stars
20      7th Floor
21      Los Angeles, CA  90067
22      310.246.6722
23      BY:  M. RANDALL OPPENHEIMER, ESQ.
24           roppenheimer@omm.com
```

4

3    On behalf of AT&T and DirecTV:
4    ARNOLD & PORTER KAYE SCHOLER, LLP
5    601 Massachusetts Avenue, N.W.
6    Washington, D.C. 20001-3743
7    202.942.6608
8    BY:   MAUREEN R. JEFFREYS, ESQ.
9          maureen.jeffreys@arnoldporter.com

12   ALSO PRESENT:
13        James Meza, III, AT&T SVP &
14   Assistant General Counsel

17   THE VIDEOGRAPHER:
18        Kathy Bentley

5

1      P R O C E E D I N G S
2        (Exhibits 1 to 4 marked.)
3            THE VIDEOGRAPHER:  This
4    begins the video deposition of John
5    Stankey as 30(b)(6) on the remedy
6    in the matter of the United States
7    versus AT&T, Case Number
8    1:17-cv-02511 on February 16th,
9    2018.  The time is approximately
10   7:29 a.m.
11           My name is Kathy Bentley from
12   the firm of date -- excuse me --
13   David Feldman Worldwide, and I am
14   the legal video specialist.  The
15   court reporter is April Brunson,
16   also in association with David
17   Feldman Worldwide.
18           Will counsel please state
19   their appearances for the video
20   record and then the witness will be
21   sworn in.
22           MR. MUSALLAM:  Samer Musallam
23   for the United States.
24           MR. OPPENHEIMER:  M. Randall

6

1    Oppenheimer, O'Melveny & Myers, for
2    AT&T, DirecTV Group Holdings and
3    Time Warner.
4         MR. MEZA:  Jim Meza on behalf
5    of AT&T.
6         MS. JEFFREYS:  Maureen
7    Jeffreys, Arnold & Porter Kaye
8    Scholer on behalf of AT&T and
9    DirecTV.
10         JOHN STANKEY,
11   having been first duly sworn, testified
12   as follows:
13              EXAMINATION
14   BY MR. MUSALLAM:
15        Q.   Good morning, Mr. Stankey.
16        A.   Good morning.
17        Q.   Mr. Stankey, you are the
18   senior executive vice president of
19   integration planning at AT&T, correct?
20        A.   Correct.
21        Q.   And prior to that, you were
22   the CEO of AT&T's Entertainment Group?
23        A.   That's correct.
24        Q.   And if the merger closes,

110

1    alleged by the government in this case
2    without disclosing attorney-client
3    communications?
4        A.   I can't answer that question
5    on privilege.
6        Q.   Does AT&T intend on revising
7    the arbitration offer prior to or during
8    trial?
9        A.   Don't know of any plans at
10   this point.
11       Q.   You don't know one way or the
12   other?
13       A.   I do not.
14       Q.   Okay.  Back to Exhibit 2,
15   Mr. Stankey, the second -- second
16   sentence of paragraph 8 says:
17   Specifically, contingent only upon the
18   closing of this merger, Turner has
19   formally and irrevocably offered its
20   distributors licensing terms.
21            Do you see that?
22       A.   I do.
23       Q.   All right.  What does it mean
24   that Turner irrevocably offered its

1   distributors these terms?
2       A.   That they will not withdraw
3   the offer from the market during the term
4   of the agreement.
5       Q.   Okay.  What -- what makes it
6   irrevocable?
7       A.   That they've made a commitment
8   not to withdraw it from the market.
9       Q.   Is that the only thing,
10  Mr. Stankey, that makes it irrevocable?
11          MR. OPPENHEIMER:  Object to
12      the extent you're asking for a
13      legal conclusion.
14      Q.   (BY MR. MUSALLAM)  Based on
15  your understanding, Mr. Stankey, is the
16  fact that they've made a commitment not
17  to withdraw it from the market the only
18  thing that makes it irrevocable?
19      A.   And the legal basis under
20  which that could be contested.
21      Q.   And what is that legal basis?
22          MR. OPPENHEIMER:  Again,
23      objection to the extent it calls
24      for a legal conclusion.

1    A.    I'm not in a position to
2    consult on the legal foundation for that.
3         Q.    (BY MR. MUSALLAM)  Well, you
4    said that -- you answered that it was
5    based on the legal basis, so I'm asking
6    you what is that legal basis.
7              MR. OPPENHEIMER:  Same.  Same
8         objection.
9         A.    I don't know that I can give
10   you any different answer.  I think one of
11   the other things that -- aside from the
12   legal issues associated with it, these
13   are large and reputable companies that
14   have brand value that is significant.
15             The last thing that any
16   executive or individual of a large
17   company would do is make a very public
18   and obvious offer like this and then walk
19   out into the market and pull it back and
20   endure the damage and the business
21   credibility issues that create aside from
22   the foundation of how it could be
23   challenged legally.
24        Q.    (BY MR. MUSALLAM)  So just to

1   be clear, you don't -- you don't have an
2   understanding of what the legal basis is
3   for why it's irrevocable, correct?
4           MR. OPPENHEIMER:  Same
5       objection to the extent it calls
6       for a legal conclusion, it's an
7       inappropriate question for the
8       witness.
9       A.   I'll leave it for the
10  attorneys to discuss that.
11      Q.   (BY MR. MUSALLAM)  Well, no,
12  but I'm asking you.  Do you -- do you --
13  I said you don't -- you don't have an
14  understanding of what the legal basis is
15  as to why it's irrevocable, correct?
16      A.   I do not.
17      Q.   Okay.  And so other than the
18  PR damage that may result of AT&T-Time
19  Warner withdrawing this offer, what
20  else -- what else is there to keep AT&T
21  from revoking these offers post merger?
22          MR. OPPENHEIMER:  The
23      question -- the question misstates
24      his prior testimony and is

114

1        argumentative.
2            Q.   (BY MR. MUSALLAM)  Do you
3        understand the question?
4            A.   It's not PR value, and that's
5        not how I described it.  It's a
6        credibility issue for businesses that
7        engage in extensive amount of commercial
8        negotiations, the damage that's done
9        through those relationships and those
10       ongoing negotiations has significant
11       financial harm.  It goes well beyond
12       public relations value.  It would
13       question our integrity in any business
14       negotiation we got into if we made a
15       public offer like this and then withdraw
16       it.
17           Q.   Okay.  So if the court allows
18       this merger to proceed, other than damage
19       to your credibility and perhaps any
20       collateral financial damage, what keeps
21       AT&T from revoking these offers that have
22       not been accepted?
23                MR. OPPENHEIMER:  Misstates
24           his prior testimony, argumentative,

Case 1:17-cv-02511-RJL   Document 83-2   Filed 03/13/18   Page 13 of 13
JOHN STANKEY, AT&T ARBITRATION REMEDY 30(b)(6) - CONFIDENTIAL

115

1        and calls for a legal conclusion.
2            A.    We have no intent to pull it
3        back from the market.
4            Q.    (BY MR. MUSALLAM)  Other than
5        you not having the intent, what is there,
6        besides the credibility damage and
7        collateral damage to your finances, would
8        keep AT&T from revoking this offer?
9            A.    I --
10               MR. OPPENHEIMER:  Asked and
11           answered, same objections.
12           A.    I honestly don't know how to
13       answer your question.  We will not pull
14       it back from the market.
15           Q.    (BY MR. MUSALLAM)  So other
16       than your commitment not to pull it back
17       from the market, what is to keep AT&T
18       from withdrawing it?
19           A.    If somebody chooses to
20       ultimately violate the law or do
21       something, I suppose the answer is
22       nothing.
23           Q.    Okay.  Okay.  And that -- that
24       sentence continues and notes that this