**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA,

                *Plaintiff,*

v.

AT&T INC., DIRECTV GROUP
HOLDINGS, LLC, and TIME WARNER
INC.,

                *Defendants.*

Case No. 1:17-cv-02511-RJL

**FILED UNDER SEAL**

---

## THE UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE OR LIMIT EVIDENCE OF DEFENDANTS' ARBITRATION OFFER

The United States respectfully moves this Court for an order: (a) precluding defendants from presenting at trial evidence of their arbitration offer—*i.e.*, the unilateral offer in their Answer to allow certain distributors to invoke so-called "baseball-style" arbitration for Turner networks after merging (the "Arbitration Offer")—or, in the alternative, (b) admitting such evidence only for the limited purpose of informing the Court's consideration of appropriate remedies following a determination of liability under Section 7 of the Clayton Act.

In answering the question of liability, post-Complaint promises that do not alter the structure of the underlying acquisition—such as defendants' Arbitration Offer—are inconsistent with the structural focus of the Clayton Act, irrelevant, and therefore, inadmissible. *See* Fed. R. Evid. 401, 402. Moreover, testimony at trial regarding defendants' Arbitration Offer threatens to waste trial time and confuse the proceedings (especially if, as it appears from discovery, it will likely be a moving target). *See* Fed. R. Evid. 403. To the extent the Court decides to permit the admission of evidence regarding Defendants' Arbitration Offer, the United States respectfully

submits that evidence should be admitted for the limited purpose of informing the Court as to the remedies *the Court* might order upon finding that the merger of AT&T/DirecTV and Time Warner (the "Transaction") violates Section 7 of the Clayton Act.

## I.    BACKGROUND

In their Answer, defendants claim to have solved the competitive problems with the Transaction by offering to enter into arbitration agreements with certain distributors if this Court blesses the Transaction (whether or not distributors even agree to the Arbitration Offer). Specifically, defendants allege that "upon the closing of this merger, Turner has formally and irrevocably offered its distributors licensing terms that, for seven years after closing, (i) entitle the distributor to invoke 'baseball-style' arbitration if it is unable to reach a satisfactory distribution agreement for Turner Networks and (ii) forbid Turner from 'going dark' on any Turner distributor during the arbitration process." Answer ¶ 8 [Dkt. # 20].

Significantly, defendants do not allege that their Arbitration Offer changes, amends, or results in an acquisition different from the Transaction that is the subject of the Complaint. Indeed, the Answer alleges that the proposals are contingent "upon the closing of *this* merger"— the Transaction. Answer ¶ 8 (emphasis added) [Dkt. # 20]. Nor do defendants allege the Arbitration Offer creates any binding or continuing commitment enforceable in this Court in connection with the Transaction. Rather, the Arbitration Offer is a purely unilateral promise that defendants assert they will adhere to should the Court find that the Transaction does not substantially lessen competition in violation of the Clayton Act.

During discovery, defendants have focused considerable time and attention on their Arbitration Offer. For example, defendants' executives have testified about—and their experts have opined on—the likely impacts of the Arbitration Offer. Defendants have questioned third-party witnesses at length on those witnesses' understandings of its terms (and variations on their

interpretations). They have similarly pressed the United States' experts on the extent to which their opinions about the Transaction account for what the defendants have offered.

Addressing the Arbitration Offer has likewise consumed valuable resources of the United States during discovery. Time Warner executives have testified that defendants designed the Arbitration Offer solely for the purposes of this litigation. Warren (Time Warner) 2/9/2018 Dep. 16:3–9 (Exhibit A); Jeffrey Bewkes 2/15/2018 Dep. 280:17–282:2 (Exhibit B). The United States has learned that few third parties to date have accepted the arbitration offer. Warren (Time Warner) 2/9/2018 Dep. 47:19–48:12 (stating that just 20 of approximately 1,000 distributors have accepted the offer). And the United States has developed expert testimony on the inadequacy of the proposal as a remedy to the Transaction's likely anticompetitive effects.

Throughout discovery, however, defendants' approach to fixing the harms from the Transaction through unilateral promises unenforceable by this Court has revealed itself to be a moving target, one that will unnecessarily confuse the issues at trial:

- Defendants have asked numerous questions of third-party witnesses speculating as to alternative terms or interpretations of the Arbitration Offer. *E.g.*, Sejen (CableOne) 2/13/2018 Dep. 132:10–133:15 (Exhibit C) ("[W]ith that amendment, would you agree it's better to have that mechanism than to not have it?").[1]

---

[1] In two other third-party depositions, *after* testimony from the witnesses as to the significant deficiencies in the Arbitration Offer, defendants asked them to assume a proposal where those issues were resolved. *See* ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

- When the United States inquired of ██████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████

- Defendants have even suggested additional fixes on other aspects of the United States'
case. For example, they inquired of ██████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

This case is about the legality of a merger under Section 7 of the Clayton Act. Absent

relief from the Court, testimony on defendants' Arbitration Offer—and any modifications they

make during trial—would waste meaningful time and confuse presentation in a tight trial

schedule. That time would be better spent on questions of whether the Transaction is unlawful

and what remedies the Court should consider ordering upon making a liability determination.

## II.   LEGAL STANDARD FOR A MOTION *IN LIMINE*

The authority to hear a motion *in limine* arises from "the district court's inherent

authority to manage the course of trials." *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10

(D.D.C. 2011) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Thus, "motions in

*limine* are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial

interruptions.'" *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir.

1990)). The district court is afforded "broad discretion" in ruling on a motion *in limine*, and that

discretion extends to "the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." *Id.* at 11.

Federal Rules of Evidence 401 and 402 authorize the Court to exclude irrelevant evidence, and Federal Rule of Evidence 403 authorizes the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues . . . [or] wasting time." *See also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. 11-1623 (RC), 2015 WL 13680817, at \*3 (D.D.C. June 12, 2015) (excluding evidence from a bench trial because "any relevance would be limited and outweighed by the dangers of undue delay and wasting time").

## III.     ARGUMENT

The Arbitration Offer puts the cart before the horse. The question before the Court in the first instance is whether the challenged acquisition—the Transaction—would substantially lessen competition. Only after answering that question can the Court determine an appropriate remedy (although the fact that defendants are willing to make such an offer "strongly supports the fears" of anticompetitive effects, *FTC v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 67 (D.D.C. 1998)). When it turns to the question of remedies, the Court should analyze, under applicable law, the appropriate relief for whatever anticompetitive effects it identifies.

### a.     Defendants' Arbitration Offer does not alter the challenged Transaction.

The Clayton Act is concerned with acquisitions, but the Arbitration Offer does not change the acquisition at issue. The Clayton Act directs itself to the structure of markets; it preserves competitive markets that require minimal regulation of who gets what and at what price. Thus, Section 7 of the Clayton Act is titled "Acquisition by one corporation of stock of another" and states that "[n]o person shall acquire" assets where the acquisition may

"substantially . . . lessen competition." 15 U.S.C. § 18. The focus of every Clayton Act case, as

directed by the statute, is a particular acquisition—here, the Transaction.

Consistent with the Clayton Act's focus on particular acquisitions, in determining

whether to permit evidence on a proposed fix, "[t]he Court's analysis centers initially on the task

of defining the transaction that is being challenged" by the government. *FTC v. Arch Coal*, *Inc.*,

No. 1:04-cv-00534-JDB, at 3 (D.D.C. July 7, 2004) (Exhibit H); *see also United States v. Dairy*

*Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) (analyzing which of two versions of a

transaction was the relevant focus of the liability analysis); *cf. United States v. Franklin Elec.*

*Co.*, 130 F. Supp. 2d 1025 (W.D. Wis. 2000).[2] For example, in *Arch Coal*, defendants had

proposed a sale of assets and the FTC moved to exclude related evidence. The Court determined

that Clayton Act Section 7 required it "to review the entire transaction in question," and

permitted the evidence because "the transaction that is the subject of the FTC's challenge is

properly viewed as the set of two transactions involving the [original agreement and additional

divestiture agreement]." *Arch Coal*, 1:04-cv-00534-JDB, at 5, 7. Likewise in *FTC v. Libbey*, 211

F. Supp. 2d 34 (D.D.C. 2002), an amended acquisition agreement "supercede[d] and nullifie[d]"

the original merger agreement, and the Court concluded the changed acquisition "becomes the

new agreement that the Court must evaluate in deciding whether an injunction should be issued."

*Id.* at 46. As explained above, the Arbitration Offer, in contrast, does not change the structure of

the Transaction. Accordingly, it fails the tests set forth in *Arch Coal* and *Libbey*.

---

[2] In *Franklin Electric*, the Western District of Wisconsin denied plaintiff's motion *in limine* to
exclude evidence of a licensing agreement in a brief, unpublished order. *United States v.
Franklin Elec. Co.*, No. 3:00-cv-00334 (W.D. Wis. July 19, 2000) (Exhibit I). Instead, the Court
ultimately held that "defendants have the burden of proving their contention" that the agreements
eliminated the risk of harm to competition, and found that they did not meet that burden.
*Franklin Elec.*, 130 F. Supp. 2d at 1033.

More fundamentally, there would be far-reaching policy implications to permitting defendants to avoid liability by unilaterally "promising" to engage in certain behavioral modifications that they say will reduce or eliminate the anticompetitive effects of their merger for a limited period of time. Parties to other merger agreements would copy defendants' playbook and devise short-term promises, unenforceable by the reviewing Court, to create distracting trial issues and obfuscate the real effects of their merger. Meanwhile, parties successful in this strategy would have no obligation to maintain such commitments once the spotlight of legal proceedings faded away with the jurisdiction of the reviewing Court.[3]

> **b.      The Arbitration Offer is inconsistent with the Tunney Act.**

Defendants' attempt to unilaterally fix the anticompetitive effects of their unlawful merger is also inconsistent with the interests of the public and the Court in binding and considered resolutions to antitrust challenges, as reflected in the Tunney Act. 15 U.S.C. § 16. Congress passed the Tunney Act in 1974 specifically to create procedures for judicial review of consent judgments for actions brought by the United States against, *inter alia*, unlawful mergers.

As a do-it-yourself fix, the Arbitration Offer is not subject to the Tunney Act and, as a result, stands in stark contrast to its goals. *First*, the Tunney Act creates judicial oversight of remedies to antitrust violations, but these behavioral promises were devised and implemented without any review or even notice to this Court. *Second*, the Tunney Act shines a public spotlight on the determination of remedies and seeks comment from any interested member of the public

---

[3] An additional concern with unilateral commitments such as the Arbitration Offer is their potential to expire or be reneged upon. Were the Court to consider defendants' Arbitration Offer, it should demand evidence that "ma[kes] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected" to occur. *Dairy Farmers*, 426 F.3d at 857 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Defendants have made approximately 1,000 arbitration offers, all of which expire in seven years.

or the industry. The Arbitration Offer, on the other hand, will receive formal comment only from those witnesses the United States is able to put on, and at the expense of time at trial that could be focused on the Transaction. *Third*, the Tunney Act requires the Court to make a public interest determination for consent judgments, including consideration of "provisions for enforcement and modification," *id.* § 16(e)(1)(A), whereas the Arbitration Offer would be carried out without any such determination or oversight by the Court and without any provisions for its enforcement whatsoever.

The Tunney Act was passed for good reason—the settlement of antitrust actions is a matter of significant public concern that should rightfully involve the courts and the parties in lining up the bases for antitrust liability with remedies designed to address those harms. Defendants' Arbitration Offer fails to address those needs.

    **c.**    **Consideration of evidence regarding behavioral remedies would be appropriate (if at all) only alongside other potential remedies after the Court finds the Transaction unlawful under Section 7.**

Evidence related to remedies should be considered only for the purpose of restoring competition eliminated by the illegal Transaction, and alongside other potential remedies to be ordered *by the Court*. At that point, defendants will "bear the burden of showing that [their] proposed remedy would negate any anticompetitive effects of the merger." *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 137 n.15 (D.D.C. 2016); *accord United States v. Aetna*, 240 F. Supp. 3d 1, 60 (D.D.C. 2017) (holding that defendants "bear the burden" to "introduce evidence that a proposed [structural remedy] would 'restore [the] competition' lost by the merger" (second alternation in original)); *see also FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 78 (D.D.C. 2015) (rejecting defendants' proposal because "the court [was] not persuaded that the proposed

[structural] divestiture [would] remedy the anticompetitive effects of the merger").[4] Defendants should not be permitted to narrow the field of remedies for the Court's consideration only to their preferred unilateral fix by introducing it as a liability question.

Consistent with the statute's emphasis on market structure, "in Government actions divestiture is the preferred remedy for an illegal merger or acquisition." *California v. Am. Stores Co.*, 495 U.S. 271, 280–281 (1990); s*ee also FTC v. PPG Indus., Inc.*, 798 F.2d 1500, 1506–07 (D.C. Cir. 1986) (stating that "anything less than a full stop injunction" a "difficult task" to justify); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 363 (1963) (stating that if the Government's claim succeeds, the merger "must be enjoined"). The United States and the courts typically prefer a structural remedy because it is "simple, relatively easy to administer, and sure," *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 331 (1961), while a conduct remedy risks "involv[ing] the courts and the Government in regulation of private affairs more deeply," *id.* at 334. To the extent evidence regarding defendants' Arbitration Offer is admitted at trial, it should be for the limited purpose of determining whether defendants have carried the heavy burden of showing that a behavioral remedy would effectively and completely protect consumers from the Transaction's likely anticompetitive effects.

## IV.    CONCLUSION

Evidence regarding defendants' Arbitration Offer is not relevant to the core issue of whether the Transaction violates Section 7. There is a real risk that significant time at trial will be wasted debating whether defendants will adhere to their unilateral Arbitration Offer or any

---

[4] To satisfy their burden and show that the arbitration offer would negate the anticompetitive effects of the merger, Defendants must "produc[e] evidence that the [remedy] will actually occur," *Aetna*, 240 F. Supp. 3d at 60, and "will remedy the anticompetitive effects of the merger," *Sysco*, 113 F. Supp. 3d at 78.

new unilateral promises made by defendants at trial, or their impact on the analysis of the

Transaction (in the United States' view, none). This would waste the Court's limited time and

confuse the proceedings. To focus and streamline the trial on the issues contemplated by the

statutory framework, the United States respectfully seeks an order either precluding admission of

evidence regarding defendants' Arbitration Offer altogether, or admitting such evidence only for

the limited purposed of enabling the Court to evaluate appropriate remedies upon a finding of

liability.


Dated:  March 9, 2018

    _/s/ Caroline Anderson_____
Craig Conrath
Andrew C. Finch
David B. Lawrence
Caroline J. Anderson
R. Cameron Gower
U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, NW, Suite 3121
Washington, DC 20530
Telephone:  (202) 353-6417
caroline.anderson@usdoj.gov

*Counsel for Plaintiff United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2018, I caused a true and correct copy of the foregoing document and its exhibits to be served upon the parties of record via e-mail.

 /s/ Caroline Anderson
Caroline Anderson
U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, NW, Suite 3121
Washington, DC 20530
Telephone:  (202) 353-6417
caroline.anderson@usdoj.gov

*Counsel for Plaintiff United States of America*