# EXHIBIT B

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

-----------------------------X

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                      Case No.
                                  1:17-cv-02511

AT&T INC., DIRECTV GROUP

HOLDINGS, LLC, and

TIME WARNER INC.,

        Defendants.

-----------------------------X

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF JEFFREY BEWKES

Washington, D.C.

FEBRUARY 15, 2018

9:08 A.M.

Reported by:
SUSAN ASHE, RMR, CRR
Job No. 53294

2

1          Thursday, February 15, 2018

2                  9:08 a.m.

3

4

5        Videotaped deposition of JEFFREY BEWKES,

6   taken at the law offices of O'Melveny & Myers, 1625

7   Eye Street, Northwest, Washington, D.C., pursuant to

8   notice, beginning at 9:08 a.m., on Thursday,

9   February 15, 2018, before Susan Ashe, RMR, CRR.

JEFFREY BEWKES - CONFIDENTIAL

```
                                                          3
 1      APPEARANCE OF COUNSEL:
 2          On Behalf of the United States:
 3              U.S. DEPARTMENT OF JUSTICE
 4              ANTITRUST DIVISION
 5              BY:  CRAIG W. CONRATH, ESQ.
 6              BY:  JARED A. HUGHES, ESQ.
 7              BY:  CAMERON GOWER, ESQ.
 8              BY:  TREVOR McLEAN, ESQ.
 9              450 5th Street, Northwest
10              Suite 7000
11              Washington, D.C.  20530
12              (202) 598-2311
13              craig.conrath@usdoj.gov
14              jared.hughes@usdoj.gov
15              richard.gower@usdoj.gov
16              trevor.mclean@usdoj.gov
17
18
19
20
21
22
23
24
```

JEFFREY BEWKES - CONFIDENTIAL

```
                                                                    4
 1     APPEARANCE OF COUNSEL (Continued):
 2          On behalf of AT&T Inc., DirecTV Group Holdings
 3       LLC, Time Warner Inc., and the Witness:
 4             O'MELVENY & MYERS, LLP
 5             1999 Avenue of the Stars, 7th Floor
 6             Los Angeles, CA  90067
 7             BY:  DANIEL PETROCELLI, ESQ.
 8                  dpetrocelli@omm.com
 9
10
11          On behalf of Time Warner and the Witness:
12             CRAVATH SWAINE & MOORE, LLP
13             825 Eighth Avenue
14             New York, New York  10019
15             BY:  ALLISON DAVIDO, ESQ.
16                  adavido@cravath.com
17
18
19
20
21     ALSO PRESENT:
22     Cindy J. O'Hagan, Esq., Time Warner, Inc.
23     Michael Sofia, Esq., Time Warner, Inc.
24     Jonathan Perry, Videographer
```

JEFFREY BEWKES - CONFIDENTIAL

5

1                       CONTENTS

2    THE WITNESS                          JEFFREY BEWKES

3    BY MR. CONRATH                              8, 315

4    BY MR. PETROCELLI                         294, 327

5

6                       EXHIBITS

7    BEWKES

8    NUMBER            DESCRIPTION                PAGE

9    Exhibit 1   Computer Printout

10               2 Pages                            39

11   Exhibit 2   E-Mail Correspondence

12               TWI-01431808 through -810          48

13   Exhibit 3   Computer Printout                  70

14   Exhibit 4   Meeting Minutes                    88

15   Exhibit 5   E-Mail Correspondence

16               TWI-00000558                      147

17   Exhibit 6   E-Mail Correspondence

18               TWI-LIT-01421345 through -353     162

19   Exhibit 7   E-Mail Correspondence

20               TWI-02102149 and -150             183

21   Exhibit 8   E-Mail Correspondence

22               TWI-02100241                      196

23   Exhibit 9   E-Mail Correspondence

24               TWI-02100214                      198

JEFFREY BEWKES - CONFIDENTIAL

6

```
 1                     EXHIBITS (Continued)

 2      BEWKES

 3      NUMBER                DESCRIPTION              PAGE

 4      Exhibit 10  E-Mail Correspondence

 5                  TWI-02087420                       214

 6      Exhibit 11  Minutes of Board of Directors

 7                  TWI-08007265 through -275          224

 8      Exhibit 12  E-Mail Correspondence

 9                  TWI-02043215 and -216             227

10      Exhibit 13  Time Warner Annual Report 2014    236

11      Exhibit 14  2016 Briefing Book

12                  TWI-08007583 through -661          244

13      Exhibit 15  Memorandum

14                  TWI-08007298 through -309          269

15      Exhibit 16  Time Warner 2016 Long-Range Plan

16                  TWI-08006957 through -7070         282

17      Exhibit 17  Time Warner 2017 Long-Range Plan

18                  TWI-LIT-00463294 through -394      285

19                        (Attached)

20

21

22

23

24
```

JEFFREY BEWKES - CONFIDENTIAL

7

1              P R O C E E D I N G S

2              VIDEOGRAPHER:  This begins the video

3    deposition of Jeffrey Bewkes, taken in the matter of

4    United States of America versus AT&T, Incorporated,

5    et al., Case No. 1:17-CV-02511 RJL, case filed in

6    the U.S. District Court for the District of

7    Columbia.

8              We're at the offices of O'Melveny &

9    Myers, 1625 I Street, Northwest, Washington, D.C.

10             Today is Thursday, February 15, 2018.

11   The time is approximately 9:08 a.m.

12             The videographer is Jonathan Perry

13   and the court reporter is Susan Ashe, both here on

14   behalf of David Feldman Worldwide.

15             Would Counsel please introduce

16   themselves and state whom they represent.

17             MR. CONRATH:  Craig Conrath, attorney

18   for the United States.

19             MR. GOWER:  Cameron Gower, attorney

20   for the United States.

21             MR. McLEAN:  Trevor McLean, with the

22   United States.

23             MR. PETROCELLI:  Daniel Petrocelli,

24   for Defendants and the witness.

JEFFREY BEWKES - CONFIDENTIAL

8

1            MS. DAVIDO:  Allison Davido, for
2    Time Warner and the witness.
3            MS. O'HAGAN:  Cindy O'Hagan, for
4    Time Warner.
5            MR. SOFIA:  Michael Sofia,
6    Time Warner.
7            THE WITNESS:  Jeffrey Bewkes, Time
8    Warner.
9            VIDEOGRAPHER:  And will the court
10   reporter swear in the witness.
11   Whereupon,
12                   JEFFREY BEWKES,
13   the Witness, called for examination, having been
14   first duly sworn according to law, was examined and
15   testified as follows:
16                       EXAMINATION
17   BY MR. CONRATH:
18        Q.   Good morning, Mr. Bewkes.
19        A.   Good morning.
20        Q.   I know you've been involved in previous
21   depositions, but I just want to remind you of a
22   couple things.
23             One is that it's very important that you
24   and I don't talk over one another.  So please, even

JEFFREY BEWKES - CONFIDENTIAL

277

1   Justice's.
2       Q.   Whose idea it was to have Turner send it
3   out on its own?
4       A.   Ours -- well, you know, maybe mine -- I
5   don't -- because when we were trying to make sure we
6   resolved any issues and concerns with this merger
7   and when we heard this theory -- and I shouldn't
8   characterize it, because I may not be able to do it,
9   because I don't agree with it -- but, you know, it's
10  some theory about -- let me --
11           All right.  If I understand the theory,
12  because I've read the file, the idea is that somehow
13  we're going to be different in our aversion to being
14  thrown out of somebody's cable system or -- whoever
15  has -- whatever kind of distribution system --
16  which, of course, we've been talking about today,
17  because that's the worst thing that can happen to
18  us.
19           So the theory I understand is that
20  somehow, even though that's been a bad thing we've
21  been trying to avoid for years, that now we have
22  some kind of a different view of it -- because, if
23  we're thrown off a cable system or a satellite
24  system or whatever we're thrown out of and we lose

JEFFREY BEWKES - CONFIDENTIAL

278

1   all those subscribers -- and let's say Charlie
2   Ergen, because he did it -- so there's 14 million
3   subscribers and all that subscriber money and ad
4   money -- that some of the -- so we're losing a lot
5   of money.  He isn't, but we are.
6          And then the theory I understand -- the
7   concern was that since maybe some consumers -- maybe
8   subscribers to that system would disconnect on their
9   monthly charge at a different or higher rate than
10  they normally do because they don't have four
11  channels or whatever channels -- CNN or something --
12  because the distributor doesn't make them
13  available -- that they disconnect.
14          That's the first thing.
15          That's a long discussion as to whether
16  that's true.
17          And then, that some of them would go to
18  DirecTV under the theory that, if we owned both the
19  network and DirecTV, that that would matter that
20  somebody would go over there.
21          I'm not going to characterize that theory.
22          Well, I don't agree with it; but I'm not
23  going to characterize it.
24          So on this idea -- I lost my train --

279

1  which thing are we talking about?
2           MR. PETROCELLI:  Arbitration.
3      Q.   The arbitration.
4      A.   Right.  All right.  So the idea is -- all
5  right, we had trouble understanding that.  We were
6  like, all right, it's a waste.  We're going to lose
7  all the money from 15 million subs, or if it's
8  Charter or Comcast, 20 or 30 million -- so it's a
9  disaster.
10          And the idea is that we would go through
11 all that pain, the risk and danger of it, because
12 maybe some of the subs we just lost -- because we
13 just lost all of them -- and for some unknown period
14 of time -- hopefully, not permanently and hopefully
15 not two of them together, because that would be
16 really bad -- and our affiliates are capable of
17 timing an ambush like that, where they do a couple,
18 too -- so that's really bad, but -- so we're losing
19 all this money, but now we have a theory that maybe
20 we can get a few dollars back from a few percentage
21 people over here?  Well, that's pretty scary -- and
22 the reason is because somebody thinks we're going to
23 take our signals out, when, in fact, it's always
24 them that wants to do it?

280

1                Why don't we just not have any ability to
2     take our signals out?  Why don't we have -- because
3     we always do it anyway -- let's try to extend the
4     negotiation -- we do it all the time.
5                Whenever anybody's really trying to bust
6     our network like that, we try to extend.
7                We try to do it in a way where whatever
8     they're doing while they won't sign an agreement
9     doesn't trigger all of our other agreements.
10               We've talked about that.
11               And that's been the problem when we got
12    into the very rare instances -- as I said, I think
13    there's only one big one, which was Ergen.  But he's
14    done it with everybody.
15               So if that's the theory, we'll get rid of
16    that.
17               So we're in settlement discussions with
18    the Department.
19               We said, well, we can solve that.  Let's
20    just have no termination on our contracts.  We'll
21    just negotiate 'til arbitration.  We won't change
22    anything and we'll do a standstill.  We'll never
23    pull any signals -- because we don't want to
24    anyway -- because if that's what you're worried

281

1  about, that solves it.
2         The Department said no -- for reasons I
3  can't understand, frankly.
4         And so we said all right.
5         Well, we were doing to do it, because
6  that's -- you know, we don't need to do that sort of
7  thing.  So let's do it ourselves -- because we still
8  need to do this merger, and if that's the concern
9  and they won't negotiate in good faith -- sorry,
10 that's my opinion -- then we'll do it and solve the
11 problem.
12        So that's why we decided, let's send that
13 out so that it's available in the merger event.
14        Now, it is a little bit of a ding, because
15 look what we were talking about today.
16        Now our competitors can reach the end of a
17 agreement -- network competitors -- and, you know,
18 they can, you know, have the ultimate last resort of
19 not reaching agreement and we wouldn't be able to.
20        But that would -- you know, then you
21 offset -- well, can we suffer whatever that -- what
22 do you call it -- constrain on us is, because it's
23 not something we actively ever wanted anyway -- with
24 the benefits of the merger, which we think are

282

1  significant -- for consumers, for us, etc.
2              And that's why we thought we'd do it.
3              That's led to certain -- ironically, at
4  least for me, that led Charlie Ergen to tell me when
5  I saw him at Christmas at a CEO lunch -- he said,
6  you know, now I'm in favor of your deal, I want that
7  arbitration provision.
8              He also said -- you know.
9              So that's how that came about.
10             I think it would have been a realistic
11 settlement offer -- I think it is.
12             I'm not on the Comcast/NBC one.  I think
13 they had something like that.  If they did, that's
14 fine.
15             We would certainly do the same.  We
16 thought it was the right answer to what was,
17 ostensibly, the concern.
18     Q.   Did you consult with anyone at AT&T before
19 deciding to send it?
20     A.   I don't remember consulting with anybody
21 at AT&T -- and I myself did not.
22             I'm not aware of any consult thing.
23             (Whereupon, Bewkes Exhibit 16 was marked
24 for identification.)

JEFFREY BEWKES - CONFIDENTIAL

330

1              CERTIFICATE

2

3         I, SUSAN ASHE, a Registered Merit

4   Reporter and Notary Public, hereby certify that the

5   foregoing is a true and accurate transcript of the

6   deposition of said witness, who was first duly sworn

7   by me on the date and place hereinbefore set forth.

8         I FURTHER CERTIFY that I am neither

9   attorney nor counsel, nor related to or employed by

10  any of the parties to the action in which this

11  deposition was taken, and further that I am not a

12  relative or employee of any attorney or counsel

13  employed in this action, nor am I financially

14  interested in this case.

15         Dated this 16th day of

16  February 2018.

17

18

19        _____

20        Susan Ashe, Notary Public

21        of the District of Columbia

22  My commission expires:  May 31, 2022.

23

24