**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff,*<br><br>v.<br><br>AT&T INC., DIRECTV GROUP HOLDINGS, LLC, and TIME WARNER INC.,<br><br>        *Defendants*. | Case No. 1:17-cv-02511-RJL |

**JOINT STATEMENT ON THE BURDEN OF PROOF AT TRIAL**

**Joint positions:**

1. Section 7 of the Clayton Act governs the Plaintiff's claims and states that "[n]o person . . . shall acquire [assets] . . . where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18.

2. As the statutory text indicates, merger review is concerned with "*probabilities*, not certainties or possibilities." *United States v. Baker Hughes, Inc.*, 908 F.2d 981, 984 (D.C. Cir. 1990) (emphasis in original).

3. "The core question is whether a merger may substantially lessen competition, and necessarily requires a prediction of the merger's impact on competition, present and future." *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 577 (1967).

**United States' positions:**

<u>Basic Standards</u>

1. Section 7 of the Clayton Act is designed to preserve, prophylactically, a competitive market structure. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977) (Section 7 is, "as we have observed many times, a prophylactic measure, intended primarily to arrest apprehended consequences of intercorporate relationships before those relationships could work their evil." (quotation omitted)); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 362 (1962) (Congress "intended to arrest anticompetitive tendencies in their 'incipiency'" (quoting *Brown Shoe*, 370 U.S. at 317, 322)).

2. Accordingly, a merger may "substantially" lessen competition in the meaning of Section 7 if there is a "reasonable probability" that anticompetitive effects materialize from the merger. *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 713 (D.C. Cir. 2001) (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 323 (1962) and legislative history for the proposition that Section 7 does not demand certainty but rather proscribes mergers with a "reasonable probability" of anticompetitive effects). "All that is necessary is that the merger create an ***appreciable danger*** of [anticompetitive] consequences in the future." *United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 49 (D.D.C. 2011) (quoting *Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1389 (7th Cir. 1986) (emphasis added)); *accord Heinz*, 246 F.3d 708, 719 (D.C. Cir. 2001); *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1046 (D.C. Cir. 2008) (Tatel, J., concurring).

3. One such anticompetitive effect is "higher prices in the affected market." *H&R Block, Inc.*, 833 F. Supp. 2d at 49; *accord Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1046 (D.C. Cir. 2008) (Tatel, J., concurring).

4. Another is "coordinated effects"—the ability and incentive for the merged firm to cooperate with another like-minded firm post-merger in a manner that harms competition and customers.  *See Heinz*, 246 F.3d at 715; *see generally* Trial Br. of the United States, Part VI.E.

5. Although vertical mergers "are less likely than horizontal mergers to create competitive problems," DOJ, *Non-Horizontal Merger Guidelines* § 4 (1984), "[a]ll mergers are within the reach of [Section] 7, and all must be tested by the same standard, whether they are classified as horizontal, vertical, conglomerate or other."  *Procter & Gamble Co.*, 386 U.S. at 577.

Burden of Proof

*Burden of Proof on Lessening of Competition*

6. Some form of burden shifting is used in all civil litigation.  In Section 7 cases, "[t]o establish a prima facie case, the Government must (1) propose the proper relevant market and (2) show that the effect of the merger in that market is likely to be anticompetitive." *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337-38 (3d Cir. 2016); *see also St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 785 (9th Cir. 2015) ("a prima facie case is established if the plaintiff proves that the merger will probably lead to anticompetitive effects in that market").

7. The United States agrees with defendants that, in a vertical merger case, there is no short-cut way to establish anticompetitive effects, as there is with horizontal mergers.  Unlike in horizontal mergers, where market concentration statistics can establish a presumption of harm, *see, e.g.*, *United States v. Anthem*, *Inc.*, 855 F.3d 345, 349 (D.C. Cir. 2017), in vertical merger cases which do not involve an increase in market concentration, no such presumption is available.  Rather, the government must prove its prima facie case by a

3

fact-specific inquiry into whether there is an appreciable danger of anticompetitive effects.

8. Once the government makes a prima facie case, the burden shifts to the defendants to "provide sufficient evidence that the prima facie case 'inaccurately predicts the transaction's probable effect on competition.'" *Anthem, Inc.*, 855 F.3d at 349 (quoting *Baker Hughes*, 908 F.2d at 991); *see also St. Alphonsus Med. Ctr.*, 778 F.3d at 791 (rebuttal evidence must "show that the prediction of anticompetitive effects from the prima facie case is inaccurate"). "The more compelling the prima facie case, the more evidence the defendant must present to rebut it successfully." *Anthem*, 855 F.3d at 349-50. Although horizontal merger cases are more common than vertical merger cases, the same burden-shifting described here is apparent when courts analyze vertical mergers. *E.g.*, *Ash Grove Cement Co. v. FTC*, 577 F.2d 1368, 1378 (9th Cir. 1978) (after government met its burden to show a "reasonable probability" that the vertical merger would lessen competition, the court turned to assessing evidence defendant "urged" on the court, finding that it could not "refute the anticompetitive probabilities").

9. If, as discussed above, the result of the presentation of evidence is an "appreciable danger" of anticompetitive effects, *H&R Block*, 833 F. Supp. 2d at 49 (quotation omitted), then Section 7 requires the Court "to arrest [those] anticompetitive tendencies in their incipiency," *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 362 (1962) (quotation omitted). "[D]oubts are to be resolved against the transaction." *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989).

*Burden of Proof on Efficiencies*

10. If the defendants' rebuttal case involves showing that the merger is justified as a result of the pro-competitive efficiencies or synergies it will create, then defendants have the

burden to prove those efficiencies. *E.g.*, *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 86 (D.D.C. 2015) ("Defendants have fallen short of making [the] showing" that savings would outweigh competitive harm); *H&R Block*, 833 F. Supp. 2d at 89 ("it is incumbent upon the merging firms to substantiate efficiency claims" (quotation omitted)). It is a settled principle of common law that a defendant has the burden to prove justifications for its otherwise unlawful acts. *See Dixon v. United States*, 548 U.S. 1, 8 (2006); *Schaffer v. Weast*, 546 U.S. 49, 60 (2005).

11. No court has ever found efficiencies that justified the anticompetitive effects of a merger. As a result, the law is unsettled as to whether defendants can defeat a Section 7 case merely by showing the merger creates efficiencies, even if they "outweigh" the anticompetitive effects proven by the plaintiff. *Anthem*, 885 F.3d at 353, 355. There is absolutely no support for, or merit to, the contention that it is the anticompetitive effects that must "substantially outweigh" the pro-competitive efficiencies, rather than the other way around. Rather, "doubts are to be resolved against the transaction." *Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989).

12. If efficiencies can justify anticompetitive harm, defendants have the burden to show that the claimed efficiencies are:
    a. "reasonably verifiable by an independent party," *H&R Block*, 833 F. Supp. 2d at 89, and not "mere speculation and promises about post-merger behavior," *Heinz*, 246 F.3d at 721; and
    b. "merger-specific," meaning "efficiencies that cannot be achieved by either company alone" absent the merger, *id.* at 721-22.

13. Defendants also "must demonstrate" that any efficiency gains "ultimately would benefit competition and, hence, consumers." *Heinz*, 246 F.3d at 720; *see also Sysco Corp.*, 113 F. Supp. 3d at 82 (D.D.C. 2015); *Anthem*, 855 F.3d at 379 (Kavanaugh, J., dissenting) ("[I]t can be difficult for the merged firm to demonstrate that a substantial portion of the efficiencies resulting from the merger would actually be passed through to consumers instead of being retained by the merging companies.").

Establishing Competitive Harm

14. Consistent with the Supreme Court's admonition that "all [mergers] must be tested by the same standard, whether they are classified as horizontal, vertical, conglomerate or other," *Procter & Gamble Co.*, 386 U.S. at 577, there is no one single way the government must establish an appreciable danger of anticompetitive effects.

15. A vertical merger may reduce competition by "foreclosing competitors of the purchasing firm in the merger from access to a potential source of supply, or from access on competitive terms." *Yankee Entm't & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 673 (S.D.N.Y. 2002).

16. Additionally, a vertically integrated firm may force its rivals to "pay[] more to procure necessary inputs" and thus cause those rivals to increase their prices downstream. *Sprint Nextel Corp. v. AT&T, Inc.*, 821 F. Supp. 2d 308, 330 (D.D.C. 2011); *see also* ABA SECTION OF ANTITRUST LAW, MERGERS AND ACQUISITIONS: UNDERSTANDING THE ANTITRUST ISSUES 383 (4th ed. 2015).

17. Additionally, a vertical merger may facilitate anticompetitive coordination. The government proves the likelihood of "coordinated effects" by establishing that "market conditions, on the whole, are conducive to reaching terms of coordination." *FTC v. CCC*

*Holdings, Inc.*, 605 F. Supp. 2d 26, 60 (D.D.C. 2009) (quotation omitted); *see generally* Trial Br. of the United States, Part VI.E.

Market Power

18. Section 7 proscribes any merger that is likely to harm competition substantially in "any line of commerce" in "any section of the country." 15 U.S.C. § 18. Accordingly, under the plain language of the statute, the government need only define one relevant market—that in which it will show potential competitive harm. *See United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957) ("Determination of the relevant market is a necessary predicate . . . **because** the threatened monopoly must be one which will substantially lessen competition within the area of effective competition." (emphasis added) (quotation marks omitted)); *Anthem*, 855 F.3d at 349 (potential anticompetitive effect in Richmond, Virginia, an "independent and alternative" basis for injunction).

19. There is no additional requirement that the government define a second market in which the defendants have market power. *Cf. United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 189 (3d Cir. 2005) ("The Supreme Court on more than one occasion has emphasized that economic realities rather than a formalistic approach must govern review of antitrust activity.").

Proving Likely Harm Through Expert Testimony

20. Courts routinely rely on expert testimony in deciding merger cases to aid in the "predictive judgment, necessarily probabilistic and judgmental rather than demonstrable," that "is called for" by Section 7. *Hosp. Corp. of Am.*, 807 F.2d at 1381. Antitrust law "adapts to modern understanding and greater experience," and courts are able to draw on

current "authorities in the economics literature" to inform their analyses. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007).

21. For example, courts look to the application of the "hypothetical monopolist test" in defining the relevant markets (*e.g.*, *Anthem*, 236 F. Supp. 3d at 198-99) and consider merger simulations and other economic analyses (*e.g.*, *Sysco*, 113 F. Supp. 3d at 66-67).

22. Economic analysis based on reasonable assumptions can assist the court in reaching the conclusion that there is a "reasonable probability" of anticompetitive effects. *See, e.g.*, *Sysco Corp.*, 113 F. Supp. 3d at 66-67, 87; *United States v. H&R Block, Inc.*, 833 F. Supp. 2d at 86-88.

Remedies

23. "[I]t is well settled that once the Government has successfully borne the considerable burden of establishing a violation of the law, all doubts as to remedy are to be resolved in its favor." *Ford Motor*, 405 U.S. at 575 (quoting *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 334 (1961)).

24. As described at No. 1 above, the Clayton Act preserves competitive market *structures* so that the government need not regulate who gets what and for how much. *See Brunswick Corp.*, 429 U.S. at 485 (1977) (Section 7 is, "as we have observed many times, a prophylactic measure, intended primarily to arrest apprehended consequences of intercorporate relationships before those relationships could work their evil." (quotation omitted)); *Phila. Nat'l Bank*, 374 U.S. at 362 (Congress "intended to arrest anticompetitive tendencies in their incipiency" (quotation omitted)).

25. Accordingly, "in Government actions divestitures is the preferred remedy for an illegal merger or acquisition." *California v. American Stores Co.*, 495 U.S. 271, 280-281

(1990); *see also id.* at 285 ("Congress also made express its view that divestiture was the most suitable remedy in a suit for relief from a § 7 violation"); *FTC v. PPG Indus., Inc.*, 798 F.2d 1500, 1506-07 (D.C. Cir. 1986) ("full stop injunction" preferred).

26. If defendants propose an alternative fix, they "bear the burden of showing that [it] would negate any anticompetitive effects of the merger." *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 137 n.15 (D.D.C. 2016). That burden includes "producing evidence that the [remedy] will actually occur," *Aetna*, 240 F. Supp. 3d at 60, and that it "will remedy the anticompetitive effects of the merger," *Sysco*, 113 F. Supp. 3d at 78.

27. "The key to the whole question of an antitrust remedy is of course the discovery of measures effective to restore competition.  Courts are not authorized in civil proceedings to punish antitrust violators, and relief must not be punitive.  But courts are authorized, indeed required, to decree relief effective to redress the violations, whatever the adverse effect of such a decree on private interests." *du Pont*, 366 U.S. at 326.

**Defendants' positions:**

Basic Standards

1. To establish the requisite probability of harm, the government must prove that "the challenged acquisition [is] *likely* substantially to lessen competition." *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 115 (D.D.C. 2004) (emphasis added). The "'ultimate inquiry in merger analysis' is . . . 'whether the merger is *likely* to create or enhance market power or facilitate its exercise.'" *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 570 (6th Cir. 2014) (quoting Carl Shapiro, the government's lead economic expert) (emphasis altered).

2. In addition, a merger must threaten to lessen competition "substantially." 15 U.S.C. § 18. Even when a merger may "result in some lessening of competition," it still is "not forbidden" by Section 7, which "deals only with such acquisitions as probably will result in lessening competition to a *substantial degree*." *Int'l Shoe Co. v. FTC*, 280 U.S. 291, 298 (1930) (emphasis added).

3. Section 7 applies to all mergers, but vertical and horizontal mergers are analyzed differently for two reasons. First a "vertical merger, unlike a horizontal one, does not eliminate a competing buyer or seller from the market." *Fruehauf Corp. v. FTC*, 603 F.2d 345, 351 (2d Cir. 1979). Second, vertical transactions normally create efficiencies and synergies between complementary supply and distribution operations, and thus "[v]ertical integration and vertical contracts are procompetitive" in most cases. *Comcast Cable Comm'ns, LLC v. FCC*, 717 F.3d 982, 991 (D.C. Cir. 2013) (Kavanaugh, J., concurring) (citing cases).

4. In the government's words, vertical mergers "are less likely than horizontal mergers to create competitive problems," DOJ, *Non-Horizontal Merger Guidelines* § 4 (1984), and "merit a stronger presumption of being efficient than do horizontal mergers." Statement of the U.S. Delegation to the OECD, Competition Comm. 2 (Feb. 21-22, 2007), https://www.ftc.gov/policy/reports/us-submissions-oecd-other-international-competition-fora.

Burden of Proof

5. Horizontal merger decisions are not appropriate authorities for identifying the government's burden in vertical merger cases. Horizontal merger cases involve a burden-shifting framework under which harm to competition is presumed from "undue concentration in the market for a particular product in a particular geographic area." *United States v. Anthem, Inc.*, 855 F.3d 345, 349 (D.C. Cir. 2017) (internal quotation marks omitted); *see Baker Hughes*, 908 F.2d at 982 (describing burden-shifting as "basic outline of a section 7 *horizontal* acquisition case" (emphasis added)).

6. Because a vertical merger, unlike a horizontal merger, does not eliminate any competitors, it cannot result in the "undue concentration" that creates a presumption of harm and shifts a burden of production to the defendants, *see Baker Hughes*, 908 F.2d at 982.

7. "As horizontal agreements are generally more suspect than vertical agreements, we must be cautious about importing relaxed standards of proof from horizontal agreement cases into vertical agreement cases. To do so might harm competition and frustrate the very goals that antitrust law seeks to achieve." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004).

8. For example, the assertion that "doubts are to be resolved against the transaction" comes from a horizontal merger case involving a significant increase in concentration, *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989), which in turn cites the heightened presumption of harm resulting from increased concentration in horizontal merger cases, *see id.* (citing *United States v. Philadelphia National Bank*, 374 U.S. 321, 362-63 (1963)).

9. Because vertical integration is presumptively efficient (*see* Nos. 3-4, *supra*), and a merger can be invalidated only if the government proves it is likely to substantially lessen competition (*see* No. 2, *supra*), the government must prove in a vertical merger case that the merger is likely to have anticompetitive effects that substantially outweigh the efficiencies and synergies reasonably resulting from the merger.  *Cf. Fruehauf*, 603 F.2d at 352 ("The ultimate objective, however, is to determine whether and how the particular merger in issue may lessen competition, i.e., what its anticompetitive effect on the market, if any, is likely to be.").

10. Evidence of pro-competitive synergies and efficiencies resulting from a vertical merger does not constitute "justifications for . . . otherwise unlawful acts," as the government asserts.  Rather, such evidence is directly relevant to the merger's likely effects on competition.  The government accordingly must account for those synergies and efficiencies in carrying its burden of proving the merger is likely to substantially lessen competition.

11. Contrary to the government's suggestion, the decision in *Ash Grove Cement Co. v. FTC*, 577 F.2d 1368 (9th Cir. 1978), does not hold that a defendant in a district court vertical merger case bears a burden of proof concerning synergies and efficiencies.  *Ash Grove*

involved a company's *appellate* challenge to factual findings in an FTC order, which was subject to a "very narrow" review standard under administrative law. *Id.* at 1377. And the company's argument on appeal was that the FTC's order failed to account for "post-acquisition evidence" showing a "quantum" of remaining competition, not that the order ignored the merger's synergies and efficiencies. *Id.* at 1379.

12. Even in horizontal merger cases subject to a burden-shifting framework, defendants need not show that claimed efficiencies are impossible to achieve except through merger. Rather, the "real question is whether the alternatives to merger are practical and more than merely theoretical." *Anthem*, 855 F.3d at 357 (citing DOJ & FTC, *Horizontal Merger Guidelines* § 10 (2010)).

13. Likewise, in horizontal merger cases, defendants claiming pro-competitive efficiencies need not show that they are "capable of precise quantification." *Arch Coal*, 329 F. Supp. 2d at 153. Efficiencies instead must be based on "credible evidence" of "a prediction backed by sound business judgment." *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1089-90 (D.D.C. 1997).

 Coordinated Effects

14. Whereas horizontal mergers inherently "increase . . . concentration" and thus potentially create a risk of coordinated conduct, *FTC v. CCC Holdings Inc.*, 605 F. Supp. 2d 26, 60 (D.D.C. 2009), vertical mergers do not increase concentration, and thus the government bears its normal burden to prove that the merger is "likely" to result in coordinated conduct that substantially lessens competition, *Arch Coal*, 329 F. Supp. 2d at 115; *see United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1109 (N.D. Cal. 2004) (rejecting

government claim where it had not proved that defendants "would likely engage in coordinated interaction"); *see also* Defs. Pretrial Br. 55-56.

Establishing Competitive Harm

15. A vertical merger does not "substantially lessen competition" simply because it disadvantages rivals. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) ("The antitrust laws . . . were enacted for the protection of competition not competitors.").

16. To prove a likely anticompetitive effect from a vertical merger, the government must prove (inter alia) that the merger will likely cause one merging party to do business exclusively or mainly with the other merging party and thereby "foreclose[]" rivals from doing business "in a substantial share of [the] market." *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 595 (1957); *see also Fruehauf*, 603 F.2d at 352 n.9.

17. A plaintiff must ultimately prove that vertical integration by merger or contract leaves rivals "stunted" as competitors, prevents them from "provid[ing] meaningful price competition," and thereby enables the defendants to raise their own prices above competitive levels. *McWane Inc. v. FTC*, 783 F.3d 814, 838-39 (11th Cir. 2015); *see also United States v. Microsoft*, 253 F.3d 34, 71 (D.C. Cir. 2001) (en banc) (same); *Fruehauf*, 603 F.2d at 352 n.9; *see generally* Defs. Pretrial Br., Part I.B.

Market Power

18. Market definition is a "necessary predicate to deciding whether a merger contravenes the Clayton Act." *United States v. Marine Bancorp.*, 418 U.S. 602, 618 (1974).

19. In a vertical merger, the government must define relevant markets for both merging parties and prove market power in both upstream and downstream markets (here, video

programming and video distribution) because, "[w]here substantial market power is absent at any one product or distribution level, vertical integration will not have an anticompetitive effect." *Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 278 (1st Cir. 1981).

Proving Likely Harm Through Expert Testimony

20. Expert testimony that the merger is likely to harm competition must be consistent with record evidence concerning operation of the relevant industry. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (government cannot meet its burden of proof with expert opinion that "is not supported by sufficient facts").

21. Any economic model the government uses to rebut the presumption favoring vertical integration must have a proven connection to real-world facts and "incorporate all aspects of the economic reality" relevant to consumer welfare, *Craftsmen Limousine, Inc. v. Ford Motor Co.,* 363 F.3d 761, 777 (8th Cir. 2004), including facts unfavorable to the government's theory of harm, *see Brooke Group*, 509 U.S. at 242 (government cannot support case with expert opinion where "record facts contradict or otherwise render the opinion unreasonable"); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 n.19 (1986) (rejecting reliance on expert opinion "based on a mathematical construction that in turn rests on assumptions" both "implausible and inconsistent with record evidence").

22. Expert opinion is nonprobative if it is based on "assumptions and simplifications that are not supported by real-world evidence." *American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041-42 (N.D. Ca. 2001).

Remedies

23. In any legal context, when "feasible and effective, the court should fashion a remedy less harsh than the strong medicine of a total injunction." *SunAmerica Corp. v. Sun Life Assur. Co. of Can.*, 77 F.3d 1325, 1337 (11th Cir. 1996).

24. Any equitable remedy chosen to address a violation of the antitrust laws should "preserve the efficiencies created by a merger, to the extent possible, without compromising the benefits that result from maintaining competitive markets." DOJ, *Antitrust Division Policy Guide to Merger Remedies*, at 4 (June 2011).

Dated: March 13, 2018

        Jointly submitted,

| | |
|---|---|
| */s/ Craig Conrath* | */s/ Daniel M. Petrocelli* |
| Craig Conrath | Daniel M. Petrocelli (*pro hac vice*) |
| Eric D. Welsh (D.C. Bar # 998618) | |
| | |
| U.S. DEPARTMENT OF JUSTICE | O'MELVENY & MEYERS LLP |
| 450 Fifth Street, N.W., Suite 7000 | 1999 Avenue of the Stars |
| Washington, DC  20530 | Los Angeles, CA 90067 |
| Telephone: (202) 514-5621 | Telephone: (310) 553-6700 |
| Facsimile: (202) 514-6381 | Facsimile: (310) 246-6779 |
| craig.conrath@usdoj.gov | dpetrocelli@omm.com |
| | |
| *Counsel for Plaintiff United States* | *Counsel for Defendants* |