UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　*Plaintiff,*<br>v.<br>AT&T INC., DIRECTV GROUP HOLDINGS, LLC, and TIME WARNER INC.,<br>　　　　*Defendants*. | Case No. 1:17-cv-02511-RJL |

## THE UNITED STATES' OPPOSITION TO DIRECTV'S MOTION TO DISMISS DIRECTV AS A DEFENDANT OR FOR ENTRY OF JUDGMENT IN ITS FAVOR

DirecTV's motion to dismiss itself as a defendant or for judgment in its favor should be denied. DirecTV is a proper party to this lawsuit and the United States has presented evidence that DirecTV's combination with Time Warner is the principal source of anticompetitive harm arising out of the challenged transaction. Put another way, but for AT&T's ownership of DirecTV, the United States would not have brought this case. DirecTV is a proper defendant because (i) AT&T's continuing ownership of DirecTV (the relevant participant in the Pay TV market) creates the risk of anticompetitive harm post-merger, and (ii) the Court may choose to grant relief against DirecTV to ensure that the Pay TV market remains competitive.

DirecTV has not cited a single case in which a motion of this type has ever been granted dismissing or entering judgment for a wholly-owned subsidiary named as a defendant in an action challenging a merger under Section 7 of the Clayton Act. Rather, DirecTV's motion appears to be an effort to make new law in order to obscure the importance of DirecTV documents that show anticompetitive incentive and ability, and therefore it distracts from the central issue before this Court: whether the effects of this unlawful merger may be substantially to lessen competition in violation of Section 7. Indeed, it is common for the United States to

1

name non-acquiring entities as defendants in Section 7 actions where appropriate, including subsidiaries analogous to DirecTV.

## I. DirecTV is a proper party because AT&T's ownership of DirecTV is the principal source of anticompetitive harm.

In many respects, this litigation is as much about DirecTV as it is about AT&T. It is the combination of DirecTV — the largest pay TV distributor in the country — with Time Warner Inc. (and its collection of valuable programming) that would provide the merged firm with the incentive and ability to raise programming costs and thus hinder competition. *See generally* Trial Tr. 2181:13 *et seq.* (Shapiro) (discussing the competitive harms from the "combination between DirecTV and Time Warner"). It is this consolidation of control, whether achieved "directly or indirectly," that Section 7 of the Clayton Act prohibits. 15 U.S.C. § 18. Although AT&T is seeking to acquire Time Warner, the United States has presented evidence at trial that it is the combination of *DirecTV* with Time Warner that largely gives rise to the anticompetitive harm alleged here. In particular:

- It is DirecTV that will give AT&T the incentive to raise rivals' costs by charging DirecTV's video distribution rivals more for Time Warner content. Trial Tr. 2177:12–19 (Shapiro).

- It is DirecTV that will benefit if rival video distributors are restricted in their use of HBO promotions to attract new and retain current customers. Trial Tr. 2178:2–4 (Shapiro).

- It is DirecTV that would be the principal beneficiary of potential coordination to deny emerging Virtual MVPDs critical Time Warner programming in a market susceptible to coordination. Trial Tr. 2177:22–2178:1 (Shapiro); *see also* Trial Tr. 2078:19–2081:16 (York/AT&T).

- It is DirecTV that is in the market for video distribution programming, which is the relevant market alleged here. Compl. ¶¶ 27-30 (Dkt. No. 1); Trial Tr. 82:23–83:2 (Fenwick/Cox); 1984:20–25 (Bond/NBCU); 2187:7–20 (Shapiro).

The fact that AT&T (rather than DirecTV) signed the acquisition agreement with Time Warner does not justify granting DirecTV's motion. DirecTV urges this Court to abandon decades of precedent by proposing an unduly narrow interpretation of the Clayton Act that would permit only *acquiring* companies like AT&T to be named as defendants. Def.'s Mot. at 2. This argument proves too much. Courts have long held that non-acquiring companies, such as sellers, are proper parties in Section 7 cases, *see, e.g.*, *United States v. Phillips Petroleum Co.*, 367 F. Supp. 1226, 1261–62 (C.D. Cal. 1973), *aff'd*, 418 U.S. 906 (1974); *United States v. Pabst Brewing Co.*, 183 F. Supp. 220, 221–22 (E.D. Wis. 1960), and indeed DirecTV's own motion elsewhere admits that Time Warner, a non-acquiring entity, is a "proper part[y] to this action." Def.'s Mot. at 5.

Accordingly, courts have "refused to take a formalistic approach to corporate structures in order to effectively implement the antitrust laws." *Community Publishers*, 882 F. Supp. 138, 141 (W.D. Ark. 1995); *cf. id.* at 139–40 (denying motion to dismiss a defendant that argued it did not "own" the acquired company, a newspaper, by interpreting Section 7 claim to mean that defendant "indirectly" acquired the newspaper); *see also id.* at 140 ("It is clear that an indirect acquisition can take various forms, including acquisition by a subsidiary or affiliate."); H.R. Rep. No. 1191, 81st Cong., 1st Sess., at 8–9 (same). The inquiry in every Section 7 case is whether the effects of an "*acquisition* may be substantially to lessen competition," 15 U.S.C. § 18 (emphasis added); the question is not, as DirecTV suggests, whether an individual corporate entity that would be part of the merged firm may substantially lessen competition.

DirecTV also concedes that many merger cases appropriately name subsidiary companies (like DirecTV) as a defendant. *See* Trial Tr. 64:16–24; Def.'s Mot. at 2. Indeed, the United States regularly names as defendants entities other than the acquiring company in Section 7 enforcement actions. Recent examples include *United States & State of Tennessee v. Vulcan Materials Co., et al.*, No. 1:17-cv-02761 (D.D.C. Dec. 22, 2017) (Dkt. 1) (Complaint) (also naming the target company's parent); *United States v. Showa Denko K. K., et al.*, No. 1:17-cv-01992 (D.D.C. Sept. 27, 2017) (Dkt. 1) (Complaint) (also naming the target company's wholly-owned subsidiary); *United States v. EnergySolutions, Inc., et al.*, No. 1:16-cv-01056 (D. Del. Nov. 16, 2016) (Dkt. 1) (Complaint) (also naming the acquiring company's parent and the target company's parent).

In fact, this is not even the first time *DirecTV* has been named by the United States as a defendant in a merger case while a subsidiary of one of the merging parties. *See United States v. Echostar Commc'ns. Corp., Hughes Elecs. Corp., General Motors Corp., & DirecTV Enters. Inc.*, No. 1:02-cv-02138 (D.D.C. Oct. 31, 2002) (Dkt. 1) (Complaint) (naming DirecTV while a subsidiary of Hughes Electronics Corporation where lawsuit sought to block sale of Hughes to Echostar).[1]

The United States has also previously named wholly-owned subsidiaries (like DirecTV) along with parent companies (like AT&T), when the subsidiary's indirect control of competitively significant assets of the acquired company presented the risk of anticompetitive harm in the post-merger world. In *United States v. GTCR Fund X/A AIV LP*, for example, the

---

[1] This relationship works both ways: the United States also named DirecTV and parent company AT&T in the so-called "Dodgers" case where the United States alleged that DirecTV had entered into unlawful information sharing agreements in violation of the Sherman Act before DirecTV was acquired by AT&T. *United States v. DirecTV Grp. Holdings, LLC & AT&T, Inc.*, No. 2:16-cv-08150 (C.D. Cal. Nov. 2, 2016) (Dkt. 1) (Complaint).

United States named as defendants both a parent company, GTCR (a private equity firm), and a wholly-owned subsidiary of GTCR (a company called Cision) where GTCR's ownership of Cision created the risk of anticompetitive harm. No. 1:16-cv-01091 (D.D.C. June 10, 2016) (Dkt. 1) (Complaint). Cision was a direct competitor of the company being acquired, PR Newswire. Even though Cision was merely a subsidiary of the acquiring company, it was the combination of Cision and PR Newswire that created the risk of anticompetitive harm, which justified naming Cision as a defendant. *See id.* ¶¶ 1–3; *see also United States v. UPM-KYMMENE, OYJ.*, No. 03 C 2528, 2003 WL 21781902 (N.D. Ill. Jul. 25, 2003) (naming both the acquiring company (UPM-Kymmene Oyj) and its wholly-owned subsidiary, (Raflatac, Inc.) in a Section 7 action seeking to block Upm-Kymmene Oyj's acquisition of Morgan Adhesives Company, a direct competitor of Raflatac).

      The same logic applies here. It is the combination of AT&T's subsidiary DirecTV, the relevant participant in the pay TV market,[2] with Time Warner's programming that creates the risk of anticompetitive harm that gave rise to the United States' Complaint. Accordingly, the Complaint states a claim against DirecTV. Because evidence at trial confirmed that DirecTV is the principal source of anticompetitive harm, *see supra* at 2–3, DirecTV's Rule 52 motion should also be denied. DirecTV has cited no cases in which an individual party was dismissed under Rule 52 for failure to present sufficient evidence of liability as to a particular party. Indeed, in all of the cases cited by DirecTV, the moving party's motions to dismiss or for summary judgment were denied. The Court should reject DirecTV's attempt to "elevate corporate form

---

[2] DirecTV suggests that because there are "countless other" market participants, somehow DirecTV was not appropriately named as a defendant. Def.'s Mot. at 4. This argument makes no sense: DirecTV is the only participant in the relevant market that will be beholden to the merged firm's shareholders and whose ownership will provide the merged firm with the incentive to hinder competition, *see supra* at 2–3.

over 'commercial realities.'" *Cmty. Publishers*, 882 F. Supp. at 141 (citing *Jim Walter Corp. v. F.T.C.*, 625 F.2d 676, 680 (5th Cir. 1980)).

## II. DirecTV is a proper party because the Court may grant relief against DirecTV.

DirecTV is also a proper party to this lawsuit because the Court may elect to grant relief involving DirecTV to eliminate anticompetitive effects that would arise from the acquisition.[3] Although the United States seeks to block the transaction in its entirety, Compl. ¶ 48(b), its Prayer for Relief asks the Court to grant "such other and further relief as the case requires and the Court deems just and proper," *id.* ¶ 48(d); *see also id.* ¶ 48(b), which explicitly recognizes the Court's inherent authority to craft a range of possible alternative remedies that may not involve a "full stop" injunction.[4]  *See United States v. Coca-Cola Bottling Co.*, 575 F.2d 222, 227–29 (9th Cir. 1978) (collecting cases detailing the Court's expansive powers in equity to design a remedy upon finding a Section 7 violation); *Phillips Petroleum Co.*, 367 F. Supp. at 1261 (applying *Pabst*, 183 F. Supp. 220, to a Section 7 claim and explaining "district courts are given large discretion to model their judgments to fit the exigencies of the particular case").

After trial, the Court may elect to impose some alternative form of relief, such as, for example, requiring the divestiture of DirecTV. Such an order from this Court regarding DirecTV would be entirely consistent with the Court's broad authority under the Clayton Act to grant relief "not only against parties who are found to have violated [Section 7], but also against *other parties* if such relief will eliminate the effects of an acquisition offensive to the statute." *Pabst*,

---

[3] For this reason, dismissal of DirecTV (or judgment for it) prior to the Court's determination of the substantive issues — whether the effects of the acquisition may be substantially to lessen competition — is premature. *See Pabst*, 183 F. Supp. at 222; *United States v. Mich. Nat'l Corp.*, Nos. 74-71882 & 74-71883, 1974 WL 982, *2–3 (E.D. Mich. Dec. 6, 1974).

[4] The United States welcomes the opportunity to submit concise briefing on a range of potential remedies alongside a "full-stop" injunction for the Court's consideration at the proper juncture.

183 F. Supp. at 221–22 (emphasis added); *see also Coca-Cola Bottling Co.*, 575 F.2d at 229 ("The district courts have frequently been faced with the necessity of granting relief against third parties in order to effectively enforce § 7 of the Clayton Act."). Indeed, Section 15 of the Clayton Act explicitly grants courts authority whenever "the ends of justice require," that "other parties should be brought before the court." 15 U.S.C. § 25. In *Pabst Brewing Co.*, a Section 7 case involving the acquisition of assets, the United States named both the acquiring company and the acquired company as defendants, but charged only the acquiring company with a violation of Section 7. 183 F. Supp. at 220. The acquired company moved for summary judgment, arguing that the Government "conceded" that it had not violated Section 7. *Id.* The Court denied the motion, stating that "[a]ll parties against whom relief *may be granted* may properly be joined" as defendants, and determining that the acquired company was a proper party despite the Government's concession that it had not violated Section 7. *Id.* at 221–22 (emphasis added); *see also United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 588, 607 (1957) (reversing and remanding a district court's dismissal of two parties in a stock acquisition that had not been found to have violated any law and stating it was "appropriate that they be retained as parties pending determination by the District Court of the relief to be granted").

DirecTV incorrectly attempts to distinguish the line of cases affirming the appropriateness of naming non-acquiring defendants by arguing that those cases involved "consummated" mergers. Def.'s Mot. at 2. When assessing the justification for naming a non-acquiring company as a defendant, however, the relevant question is not whether a merger has been consummated; instead, the question is whether some relief may be granted against the non-acquiring entity that resolves the anticompetitive harms stemming from the merger, whether that harm needs to be undone (in a consummated merger) or prevented. That is especially so where,

as here, the non-acquiring defendant (DirecTV) is a principal source of anticompetitive harm, such that it is readily apparent *before* the consummation of the merger that DirecTV, if divested, could reduce or eliminate anticompetitive concerns. *See e.g.*, Trial Tr. 2180:17–10 (Shapiro); 2181:13–18 (Shapiro) (explaining that the combination of DirecTV and Time Warner is the source of anticompetitive harm). Indeed, before filing this Complaint, the United States "offered to settle this matter with structural relief involving partial divestitures," Pl.'s T. Br. at 14, which would have enabled the merging parties to attempt to achieve many of the purported benefits of vertical integration.[5]

Moreover, contrary to the rule DirecTV suggests, Def.'s Mot. at 2, courts *have* applied the logic of *Pabst* to pre-merger cases. In *Michigan National Corp.*, a case Defendant itself cites, Def.'s Mot. at 3, the court applied the reasoning of *Pabst* to a *proposed* merger in rejecting a subsidiary defendant's summary judgment motion. 1974 WL 982, at *2–3. That subsidiary

---

[5] DirecTV's suggestion that "the real motivation" for naming DirecTV as a Defendant was to admit pre-acquisition DirecTV documents into evidence ignores that such documents are admissible regardless of whether the Court grants DirecTV's motion. DirecTV's motion fails to address the business records exception, which provides a basis for admission of DirecTV's pre-acquisition statements under Federal Rule of Evidence 803(6). *See PNC Bank, Nat'l Ass'n v. Orchid Grp. Invs., L.L.C.*, 36 F. Supp. 3d 1294, 1301–03 (M.D. Fla. 2014) ("[W]hen business records pass from a predecessor entity to a successor entity under a merger or receivership, the successor entity is able to authenticate the business records of its predecessor." (quoting *Phillips v. Mortg. Elec. Registration Sys., Inc.*, No. 5:09-cv-2507, 2013 WL 1498956, at *2 (N.D. Ala. Apr. 5, 2013))); *see also United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity."). Pre-acquisition DirecTV documents are also admissible as party admissions or statements of a party opponent under 801(d)(2), *see Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 504 (D. Del. 2005) (admitting statements of CEO of predecessor company as party admissions against successor corporation post-merger); *Sherif v. AstraZeneca*, No. Civ A. 00-3285, 2002 WL 32350023, at *2–3 (E.D. Pa. May 9, 2002) (holding that pre-merger statements by employees of predecessor companies were admissible as non-hearsay statements of a party opponent against successor corporation). The United States requests leave to brief this matter if the Court grants DirecTV's motion.

argued its "only connection with any of the other Defendants [wa]s that it [wa]s one of the banks held by" the acquiring company (in other words, it was a passive subsidiary), and that "the complaint ask[ed] no relief against it." *Id*. at *2.  The district court denied summary judgment, reasoning that various possible remedies might involve that subsidiary "*in the event* the government prevails in this action." *Id.* at *2–3 (emphasis added).  Here, upon finding that the transaction violates Section 7, the Court may choose permanently to enjoin AT&T from acquiring Time Warner, (the United States' preferred remedy), or may indeed wish to fashion an alternative remedy, such as a divestiture of DirecTV.

### III.   CONCLUSION

The United States respectfully requests that the Court deny DirecTV's motion to dismiss DirecTV as a defendant or for judgment in DirecTV's favor.

Dated:  April 19, 2018

/s/ *Caroline Anderson*
Caroline Anderson
Nathan Brenner
U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, NW, Suite 3121
Washington, DC 20530
Telephone:  (202) 353-6417
caroline.anderson@usdoj.gov

*Counsel for Plaintiff United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2018, I caused a true and correct copy of the foregoing document and its exhibits to be served upon the parties of record via ECF.

/s/ Caroline Anderson
Caroline Anderson
U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, NW, Room 3121
Washington, DC 20530
Telephone: (202) 353-6417
caroline.anderson@usdoj.gov

*Counsel for Plaintiff United States of America*