**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>              Plaintiff,<br><br>    v.<br><br>AT&T INC., ET AL,<br><br>              Defendants. | Case No. 1:17-cv-2511-RJL |

**BRIEF OF CINÉMOI NORTH AMERICA AS *AMICUS CURIAE***
**IN SUPPORT OF THE UNITED STATES OF AMERICA**

Laurence M. Sandell (D.C. Bar No. 989952)
lsandell@meimark.com
MEI & MARK LLP
P.O. Box 65981
Washington, DC 20035-5981
Phone: 888-860-5678
Facsimile: 888-706-1173

David W. Kesselman (*pro hac app. pending*)
Amy T. Brantly (*pro hac app. pending*)
KESSELMAN BRANTLY STOCKINGER LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Phone: 310-307-4555
Fax: 310-307-4570

*Counsel for Proposed Amicus*
CINÉMOI NORTH AMERICA

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Local Rule 7(o)(5) and FRAP 29(a)(4) and 26.1, Cinémoi North America states that no publicly held corporation owns 10% or more of its stock, and that its parent company is Multivision Media International, LLC.

## STATEMENT OF *AMICUS CURIAE* INDEPENDENCE

Pursuant to Local Rule 7(o)(5) and FRAP 29(a)(4)(E), Cinémoi North America states that:

(i) no party's counsel authored the brief in whole or in part;

(ii) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and

(iii) no person—other than the *amicus curiae*, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................... iv

**INTRODUCTION AND INTEREST OF *AMICUS CURIAE*** .................................. 1

**ARGUMENT** ........................................................................................................ 2

    **I.** **For Independent Cable Networks, the Proposed Merger Will Limit Access and Foreclose Competition in an Already Highly Concentrated Marketplace** ........... 2

    **II.** **The Merger Should Be Enjoined to Protect Competition and Entrepreneurial Choice** ................................................................................................... 4

    **III.** **A Permanent Injunction Is Required to Protect the Public Interest** ................... 6

**CONCLUSION** ..................................................................................................... 8

## TABLE OF AUTHORITIES

**Case**                                                                                                **Pages**

*Brown Shoe Co. v. United States*,
      370 U.S. 294 (1962)......................................................................................... 4, 7

*Cargill, Inc. v. Monfort of Colorado*, *Inc.*,
      479 U.S. 104 (1986)............................................................................................ 4

*FTC v. Ind. Fed'n of Dentists*,
      476 U.S. 447 (1986)............................................................................................ 5

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
      435 U.S. 679 (1978)......................................................................................... 4, 5

*United States v. Cont'l Can Co.*,
      378 U.S. 441 (1964)............................................................................................ 5

*United States v. Philadelphia Nat'l Bank*,
      374 U.S. 321 (1963)............................................................................................ 4

*United States v. Topco Associates, Inc.*,
      405 U.S. 596 (1972)............................................................................................ 2

### Statutes and Rules

Local Rules of the U.S. Dist. Ct. for D.C. 7(o)............................................................. 1

Fed. R. App. P. 29(a)(4)(D) ........................................................................................ 1

### Secondary Sources

American Antitrust Institute, *AAI Applauds Move to Block AT&T-Time Warner Merger, Sets
      Record Straight on Vertical Merger Enforcement* (Dec. 6, 2017)................................. 3, 5, 6, 7

Lina Khan and Sandeep Vaheesan, *Market Power and Inequality: The Antitrust
      Counterrevolution and Its Discontents,* 11 Harv. L. & Pol'y Rev. 235 (2017)......................... 6

Meg James, *Fox's Chase Carey Calls a la Carte Programming 'a Fantasy,'* L.A. Times (Aug. 8,
      2013) ............................................................................................................ 2

Richard Blumenthal and Mignon Clyburn, *It's Too Soon to Unleash Comcast* (Feb. 5, 2018)..... 6

Warren Grimes, *Entrepreneurial Choice: Restoring A Relevant Antitrust Policy,* 68 Case W. Res. 61 (2017)............................................................................................................................. 2, 3

Warren Grimes, *The Distribution of Pay Television in the United States: Let an Unshackled Marketplace Decide,* 5 J. Int'l. Media & Ent. L. 1 (2013)......................................... 2, 4, 5, 7, 8

## INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Cinémoi North America ("Cinémoi") supports the United States of America in its opposition to the acquisition of Time Warner by AT&T.[1] Cinémoi is an independent, woman-owned, 24-hour, award-winning television network dedicated to providing programming that is designed to lift the image of women and girls in our society. It is defined by high-quality content that reintroduces American audiences to outstanding vintage and contemporary films, as well as to exotic destinations around the world. Cinémoi is the only cable network owned by a woman.[2] Cinémoi is not affiliated with a broadcast station that enjoys retransmission consent, it does not control any sports rights, and it is not part of a bundle of fully distributed channels that would increase its leverage against Multichannel Video Programming Distributors ("MVPDs").

As a small independent television network, Cinémoi's interest in the instant case is especially strong. Based upon its own industry experience and knowledge, Cinémoi believes that the proposed merger is anticompetitive because it will centralize the power of a combined AT&T and Time Warner entity to control programming content and distribution throughout the United States. To preserve both entrepreneurial and consumer choice, as well as access to independent television content, Cinémoi urges the Court to find that the proposed merger violates Section 7 of the Clayton Act, and respectfully requests that the merger be permanently enjoined to protect

---

[1] Pursuant to FRAP 29(a)(4)(D) and Local Rule 7(o)(4), the source of Cinémoi's authority to file the instant *amicus curiae* brief is this Court's anticipated grant of Cinémoi's corresponding motion pursuant to Local Rule 7(o)(2).

[2] In December 2017, Oprah Winfrey sold a majority interest in the OWN network—previously the only other woman-owned network—to Discovery Communications.

competition and the public interest. *See* Declaration of Professor Warren Grimes In Support Of

Brief Of Cinémoi North America As Amicus Curiae (the "Grimes Decl.").[3]

## ARGUMENT

> Antitrust laws in general, and the Sherman Act in particular, are
> the Magna Carta of free enterprise. They are as important to the
> preservation of economic freedom and our free-enterprise system
> as the Bill of Rights is to the protection of our fundamental
> personal freedoms. And the freedom guaranteed each and every
> business, no matter how small, is the freedom to compete – to
> assert with vigor, imagination, devotion, and ingenuity whatever
> economic muscle it can muster.
>
> - Justice Thurgood Marshall[4]

## I.   For Independent Cable Networks, the Proposed Merger Will Limit Access and Foreclose Competition in an Already Highly Concentrated Marketplace

Traditional cable programming is supplied by large vertically integrated MVPDs. Aside

from digital television, consumers are forced to buy high-priced channel bundles from these

MVPDs.[5] Concentration at both content and distribution levels makes it more difficult for an

innovative, independent network like Cinémoi to access meaningful carriage and offer

consumers additional choices in programming.[6]

Independent programmers like Cinémoi are often relegated to the lowest penetrated tiers

and typically receive no license fees. Most MVPDs only make channel space available when

independent networks agree to pay for carriage through their advertising sales department. In

---

[3] Professor Grimes is the Associate Dean for Research and the Irvine D. and Florence Rosenberg Professor of Law at Southwestern Law School in Los Angeles. Professor Grimes is the co-author of a well-known treatise on antitrust law, *The Law of Antitrust An Integrated Handbook.*
[4] *United States v. Topco Associates, Inc.*, 405 U.S. 596, 610 (1972).
[5] *See* Warren S. Grimes, *The Distribution of Pay Television in the United States: Let an Unshackled Marketplace Decide,* 5 J. Int'l. Media & Ent. L. 1, 3-4 (2013).
[6] Warren Grimes, *Entrepreneurial Choice: Restoring A Relevant Antitrust Policy,* 68 Case W. Res. 61, 99 (2017) (citing Meg James, *Fox's Chase Carey Calls a la Carte Programming 'a Fantasy,'* L.A. Times (Aug. 8, 2013), *http://articles.latimes.com/2013/aug/08/entertainment/la-et-ct-foxs-chase-carey-calls-ala-carte-a-fantasy-20130808* [https://perma.cc/6LJ7-38JS]).

contrast, a channel like Turner Classic Movies (TCM), which is owned by Time Warner and bundled with "must have" channels like CNN and TBS, receives hundreds of millions of dollars per year in license fee revenue and is carried on the most widely penetrated tier. Independent networks like Cinémoi must attempt to compete with TCM and other similar channels using their own resources without the benefit of such license fees.

In today's marketplace, the only way to gain meaningful carriage from the cable oligopoly is through retransmission consent, bundling, leveraging sports rights, or agreeing to pay-for-play arrangements. It requires negotiating with vertical firms that control distribution and favor their own content or demand a discriminatory ransom.[7] The problem is pervasive and Cinémoi is by no means unique in having difficulty in gaining access to a distribution on MPVDs tiers.[8]

Against this backdrop, allowing the AT&T and Time Warner merger to proceed on any terms only exacerbates problems of access. Indeed, allowing the merger to proceed will stifle innovation, creativity, and new entrepreneurs in a concentrated industry with high barriers to entry.[9] For example, if an independent network that is carried by AT&T offers good content and begins to win market share, AT&T's best recourse is to eliminate the competitive threat by restricting the independent network's access to viewers. With control of a distribution pathway to

---

[7]  Warren Grimes, *Entrepreneurial Choice: Restoring A Relevant Antitrust Policy,* 68 Case W. Res. 61, 86 (2017) (citing a 2007 study commissioned by the FCC which found that cable distributors are more likely to carry their own channels than those of rivals and found a lack of evidence of efficiencies in vertical integration of program providers and distributors); Grimes Decl. at ¶ 2.

[8]  *Id.* at 86 n. 103; Grimes Decl. at ¶ 2.

[9]  American Antitrust Institute, *AAI Applauds Move to Block AT&T-Time Warner Merger, Sets Right Straight on Vertical Merger Enforcement,* Dec. 6, 2017, *www.antitrustinstitute.org/sites/default/files/AT%26T_Time%20Warner%20Commentary_F.pdf* at 1, 6 ("The result [of the merger] is likely to be higher prices and lower quality for consumers, less innovation in video content and distribution, and less diversity in the media.")

more than 172 million cable, internet and mobile subscribers, AT&T will be in a position to utilize a variety of techniques to favor its own content and disadvantage Cinémoi and other independent channels. Conversely, in a non-vertically integrated market, competition between channels will force Time Warner to improve its content to avoid losing viewers and advertising dollars. Additionally, any shift in revenue to independent networks allows them to invest in additional content and deliver more value to consumers. Either way, consumers benefit as a function of a competitive and functional market and are offered choices.

As amended, Section 7 of the Clayton Act was intended to prevent precisely this type of anticompetitive merger. As the Supreme Court has observed, Section 7 was amended "to protect small businesses and to stem the rising tide of concentrations in particular markets . . . ."[10] The goal was to "arrest anticompetitive tendencies in their 'incipiency'"[11] and to address "the danger to the American economy in unchecked corporate expansions through mergers."[12] The type of unrivaled economic concentration of power that would arise from the proposed merger of AT&T and Time Warner would harm independent networks like Cinémoi and others. It must be stopped.

## II.     The Merger Should Be Enjoined to Protect Competition and Entrepreneurial Choice

Offering meaningful choice is a vital part of competition.[13] The Supreme Court has recognized that consumer choice is one of the goals of competition law.[14] "Meaningful consumer

---

[10]  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 127 (1986).

[11]  *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 362 (1963) (citing *Brown Shoe Co. v. United States,* 370 U.S. 294 at 317, 322 (1962)).

[12]  *Brown Shoe Co. v. United States*, 370 U.S. 294, 315 (1962).

[13]  Grimes, *supra* note 5, at 63-64 n.4 (2017) ("the Sherman Act's proponents were not in the least reticent about their goal of protecting the small entrepreneur . . .").

[14]  *Nat'l Soc'y of Prof'l Eng'rs v. United States,* 435 U.S. 679, 695 (1978) ("The assumption that competition is the best method of allocating resources in a free market recognizes that all elements of a bargain – quality, service, safety, and durability – and not just immediate cost, are

choice exists when market structure allows for new entry and sustainability for small firms that offer what consumers want."[15] Similarly, entrepreneurial choice - the opportunity for a myriad of small businesses to offer a diversity of products and services - is critical to maintaining consumer choice and a well-functioning free market system.[16]

Recent history in the telecommunications industry supports that a permanent injunction is required to protect competition, consumers and small business. For example, the Comcast acquisition of NBC Universal resulted in vertical integration of the country's largest cable and Internet provider with one of the largest video content providers. The result of the combination has made it more difficult for independent networks to get their video programming to consumers.[17] Allowing a further merger will "foreclose . . . smaller rivals and innovative business models."[18]

A permanent injunction will foster competition, which is best served when distributors of video programming are not vertically integrated into content supply.[19] Divestiture or conduct remedies will not be sufficient. As stated by the independent American Antitrust Institute,

> [b]ehavioral remedies in particular are well known to be fraught
> with incentive, compliance, and enforcement problems . . . they do
> not change the merged firm's incentives to exercise market power
> … [and] require ongoing monitoring and enforcement by the

---

favorably affected by *the free opportunity to select among alternative offers*.") (emphasis added). *See also FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986) ("[A]n agreement limiting consumer choice by impeding the 'ordinary give and take of the market place,' . . . cannot be sustained under the Rule of Reason.") (quoting *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 692); *United States v. Cont'l Can Co.,* 378 U.S. 441, 453-56 (1964) (discussing the role played by price differences and buyer preferences in influencing consumer choice and creating competition).

[15]  Grimes, *supra*, n. 5, at 65.

[16]  *Id.* at 63.

[17]  *Id.* at 87, n. 110; Grimes Decl. at ¶ 3.

[18]  *AAI Applauds Move to Block AT&T-Time Warner Merger, Sets Record Straight on Vertical Merger Enforcement, supra,* note 6, at 6.

[19]  *Id.*

agencies and the courts, which are not well suited to act as regulators.[20]

The merger conditions imposed in the Comcast/NBC Universal merger have not succeeded in protecting competition and have already begun to expire.[21]

Moreover, the AT&T/Time Warner merger is even more concerning because, for the first time, an MVPD with a truly national footprint is seeking to own content. In all previous cases of vertical consolidation, the vertically integrated MVPD provided service in a limited geographic territory that left significant swaths of the country controlled by other distributors. Here, since carriage on DIRECTV alone is sufficient to ensure Time Warner content throughout the country, AT&T can artificially raise the price of Time Warner content and competing MVPDs would be required to pay these increases or deny their customers "must have" content. Increases in Time Warner content can only be offset in three ways: (1) by increasing prices to consumers, (2) reducing profit margins, or (3) by eliminating independent channels from the programming budget. For companies competing against AT&T for subscribers, independent channels will be the first target. Competition can only flourish if mergers undermining a competitive structure are blocked consistent with the Clayton Act.[22] Allowing this merger to proceed provides AT&T with the means and incentive to discriminate against independent programmers like Cinémoi and harm competition.

## III.    A Permanent Injunction Is Required to Protect the Public Interest

Independent content programmers enhance consumer choice by creating and providing

---

[20]   *Id.* at 2, 4; *see also* Lina Khan and Sandeep Vaheesan, *Market Power and Inequality: The Antitrust Counterrevolution and Its Discontents,* 11 Harv. L. & Pol'y Rev. 235, 287, 290 (2017).
[21]   Richard Blumenthal and Mignon Clyburn, *It's Too Soon to Unleash Comcast,* Feb. 5, 2018, *https://www.bloomberg.com/view/articles/2018-02-05/it-s-too-soon-to-unleash-comcast;* Grimes Decl. at ¶ 3.
[22]   *AAI Applauds Move to Block AT&T-Time Warner Merger, Sets Record Straight on Vertical Merger Enforcement, supra,* note 6, at 2, 4.

diverse and innovative content that is not the focus of the large media conglomerates that dominate cable channels. The vast majority of channels on basic cable are owned by six non-diverse media conglomerates: ABC-Disney, FOX, CBS, Viacom, Comcast, and Time Warner.[23] These businesses also yield tremendous power over politics and are able to use their power to lobby for policies that further enhance their wealth and power. As noted, in this landscape, it is virtually impossible for independent channels to get meaningful carriage. The video programming marketplace has become so challenging and the market power of MVPDs (vis-à-vis independent programmers) so one-sided, that the very existence of independent video programmers is at significant risk. The AT&T/Time Warner merger should be enjoined to protect one of the founding goals of the Clayton Act – decentralization of economic power.[24] Allowing a handful of media conglomerates to control content is undemocratic and dangerous to our democracy and First Amendment rights.[25]

Consolidation of power among media conglomerates also stifles diverse programming and diversity in the profession. Opportunity for women and minorities in the media is an ongoing problem, as is exemplified by the fact that there is only one woman-owned television network. Additionally, programming itself should represent the diverse voices and viewpoints of all Americans.[26] Creation of film and video programs remains a creative occupation and many

---

[23]  Grimes Decl. at ¶ 3.
[24]  *Brown Shoe*, 370 U.S. at 316, 318, 344; Grimes Decl. at ¶ 4.
[25]   Grimes, *supra,* note 5, at 100 ("Levels of concentration that may be tolerable in some industries are objectionable in a service and creative component industry so vital to consumers. Vertical integration that may be relatively unproblematic in some industries is likely to be troublesome when providers of popular content wield such leverage over distributors.")
[26]  *AAI Applauds Move to Block AT&T-Time Warner Merger, Sets Record Straight on Vertical Merger Enforcement, supra,* note 6, at 1 ("The result [of the merger] is likely to be higher prices and lower quality for consumers, less innovation in video content and distribution, and less diversity in the media.")

7

producers remain tenaciously independent.[27] These independent film and television producers struggle to get their programming to the public because it requires "negotiating the hurdles of vertically integrated firms that control distribution and favor their own content."[28] The acquisition of Time Warner will only serve to rehash content instead of allowing independent channels to create new programming and cultural visions that can serve the needs and interests of the diverse public. Indeed, the consolidation of power into only a few mainstream, oligopolistic players denies Americans of programming and content that mirrors the true make-up of American society and the diversity that our country was founded upon.

### CONCLUSION

The proposed AT&T and Time Warner merger would result in the largest acquisition in media history and an unprecedented concentration of power in programming and distribution. This consolidation of power will likely destroy independent networks that are central to innovation, quality of programming, and diversity. Consistent with the Clayton Act, a permanent injunction is necessary to protect competition, including entrepreneurial and consumer choice.

---

[27] Grimes, *supra,* note 5, at 86.
[28] *Id.* at 86 n. 102-103 (stating, among other things, that the owners of independent channels have publicly complained of difficulties in obtaining distribution, including the CEO of Ovation TV, whose arts and entertainment channel had been dropped by Time Warner Cable); Grimes Decl. at ¶ 2.

Dated: May 18, 2018                    Respectfully submitted,


                                       /s/ Laurence M. Sandell
                                       Laurence M. Sandell (D.C. Bar No. 989952)
                                       lsandell@meimark.com
                                       MEI & MARK LLP
                                       P.O. Box 65981
                                       Washington, DC 20035-5981
                                       Phone: 888-860-5678
                                       Facsimile: 888-706-1173

                                       David W. Kesselman (*pro hac app. pending*)
                                       Amy T. Brantly (*pro hac app. pending*)
                                       KESSELMAN BRANTLY STOCKINGER LLP
                                       1230 Rosecrans Avenue, Suite 690
                                       Manhattan Beach, CA 90266
                                       Phone: 310-307-4555
                                       Fax: 310-307-4570

                                       *Counsel for Proposed Amicus*
                                       CINÉMOI NORTH AMERICA