**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:17-cv-02511-RJL |
| AT&T, INC., DIRECTV GROUP HOLDINGS, LLC, and TIME WARNER INC., | |
| *Defendants.* | |

**THIRD-PARTIES CBS CORP., TWENTY-FIRST CENTURY FOX, INC., UNIVISION COMMUNICATIONS INC., VIACOM INTERNATIONAL INC., AND THE WALT DISNEY COMPANY'S MOTION TO INTERVENE OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A BRIEF AS *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY**

Pursuant to Federal Rule of Civil Procedure 24, CBS Corp., Twenty-First Century Fox, Inc., Univision Communications Inc., Viacom International Inc., and The Walt Disney Company (collectively, the "Content Companies") respectfully seek leave to intervene in this action for the limited purpose of submitting the attached brief and opposing the joint request by RCN Telecom Services, LLC, Grande Communications Networks, LLC, WaveDivision Holdings, LLC, and the American Cable Association (collectively, "RCN/ACA") that the Court adopt a remedy that would require the production of highly confidential and competitively sensitive content licensing agreements between each of the Content Companies and video distributors.

Alternatively, in the event the Court denies the Content Companies' request to intervene, they respectfully request leave to file the enclosed brief as *amici curiae* in support of neither party to assist the Court in evaluating the implications of RCN/ACA's proposal.

The Plaintiff does not oppose this motion, while the Defendants do not consent.

DATED:  May 29, 2018                    Respectfully Submitted,


                                        /s/ Kenneth S. Reinker
                                        Kenneth S. Reinker (D.C. Bar # 999958)
                                        CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                        2000 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20006
                                        T: 202-974-1500
                                        F: 202-974-1999
                                        kreinker@cgsh.com

                                        Attorneys for Proposed Intervenors
                                            *Twenty-First Century Fox, Inc.,*
                                            *Univision Communications Inc., and*
                                            *Viacom International Inc.*

                                        /s/ Cody Shawn Harris (by permission)
                                        Robert A. Van Nest (*pro hac vice*)
                                        Cody Shawn Harris (*pro hac vice*)
                                        KEKER VAN NEST & PETERS LLP
                                        633 Battery Street
                                        San Francisco, California 94111
                                        T: 415-391-5400
                                        F: 415-397-7188
                                        rvannest@keker.com
                                        charris@keker.com

                                        Attorneys for Proposed Intervenor
                                            *The Walt Disney Company*

                                        /s/ Kathryn M. Fenton (by permission)
                                        Kathryn M. Fenton (D.C. Bar # 250944)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C. 20001
                                        T: 202-879-3746
                                        F: 202-626-1700
                                        kmfenton@jonesday.com

                                        Attorneys for Proposed Intervenor
                                            *CBS Corp.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| *Plaintiff,* |
| v. |
| AT&T, INC., DIRECTV GROUP HOLDINGS, LLC, and TIME WARNER INC., |
| *Defendants.* |

Case No. 1:17-cv-02511-RJL

**MEMORANDUM OF LAW IN SUPPORT OF CBS CORP., TWENTY-FIRST
CENTURY FOX, INC., UNIVISION COMMUNICATIONS INC., VIACOM
INTERNATIONAL INC., AND THE WALT DISNEY COMPANY'S MOTION TO
INTERVENE OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A BRIEF AS
*AMICI CURIAE* IN SUPPORT OF NEITHER PARTY**

CBS Corp., Twenty-First Century Fox, Inc., Univision Communications Inc., Viacom

International Inc., and The Walt Disney Company (the "Content Companies") create and

produce video programming. Each Content Company negotiates content licensing agreements

with multichannel video programming distributors ("MVPDs"), including Defendants AT&T,

Inc., and DIRECTV Group Holdings, LLC (collectively, "AT&T/DIRECTV"), that make

television programming available to their subscribers over several types of consumer-facing

platforms. These licensing agreements contain extraordinarily sensitive information that is

central to the Content Companies' respective business strategies, including, among other things,

pricing, carriage, and other business terms. Because the Content Companies will suffer

significant harm if the terms of their agreements are disclosed to third parties, the agreements are

subject to strict internal controls and contain stringent mutual confidentiality provisions.

Notwithstanding ample precedent recognizing the extraordinary sensitivity of these agreements, RCN/ACA propose that, if the transaction at issue in this proceeding is approved, the Court should adopt an unprecedented arbitration procedure whereby when a distributor that competes with AT&T/DIRECTV seeks to arbitrate a dispute over its access to the merged entity's programming, the competing distributor would provide to AT&T/DIRECTV "information with the rates, terms, and conditions in agreements for programming it acquires from other programmers," including the Content Companies (the "Compulsory Disclosure Proposal"). RCN/ACA Br. at 17. In sum, RCN/ACA is proposing an anticompetitive information exchange that would give AT&T/DIRECTV broad access to the Content Companies' competitively sensitive agreements, despite the fact that they are not at issue in and are unrelated to the harms complained of by RCN/ACA.

The Content Companies thus seek to intervene to ensure that any remedy fashioned by this Court protects their highly confidential, competitively sensitive information. Because only the Content Companies can adequately protect their significant confidentiality interests, they are entitled to intervene as a matter of right. If, however, the Court decides the Content Companies have no *right* to intervene, it should nonetheless *permit* them to intervene for the limited purpose of opposing RCN/ACA's Compulsory Disclosure Proposal for the reasons set forth in the attached opposition brief or, in the alternative, grant them leave to file the attached brief as *amici curiae* to assist the Court in evaluating that proposal.

## **ARGUMENT**

Federal Rule of Civil Procedure 24(a)(2) permits a party to intervene as of right if (1) its motion is timely; (2) it "claims an interest relating to the property or transaction that is the subject of the action"; (3) "disposing of the action may as a practical matter impair or impede

[its] ability to protect its interest"; and (4) its interest is not "adequately represented" by existing parties to the litigation.  Fed. R. Civ. P. 24(a)(2); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  The Content Companies meet each of these requirements.

Alternatively, the Content Companies should be permitted to intervene, or participate in this action as *amici curiae*, to submit their brief in opposition to RCN/ACA's anticompetitive and illogical Compulsory Disclosure Proposal.  They satisfy the standard for permissive intervention: their interests are not adequately represented by any party, and their proposed brief is relevant to the disposition of this case.  Fed. R. Civ. P. 24(b); D.D.C. Local Civ. R. 7(o)(2).

## I.   THE CONTENT COMPANIES SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT

The Content Companies are entitled to intervene as of right for the limited purpose of challenging RCN/ACA's proposal requiring the broad disclosure of the Content Companies' highly confidential content licensing agreements during arbitration procedures.

*First*, this motion to intervene is timely.  The Content Companies have taken no position with respect to the transaction at issue in this proceeding and do not do so here.  Their interest arose two weeks ago when RCN/ACA filed their proposed *amicus* brief on May 14, 2018, urging this Court to fashion a remedy that would require disclosure of the Content Companies' competitively sensitive information.  It is that Compulsory Disclosure Proposal, raised for the first time by RCN/ACA in their proposed *amicus* brief, that necessitates the Content Companies' intervention.  *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 907 (D.C. Cir. 1977) ("The amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness.  Rather, the court should also look to the related circumstances, including the purpose for which intervention is sought.").  Moreover, this motion to intervene, or in the alternative, motion for leave to file a brief *amici curiae*, has been filed within two weeks of

RCN/ACA's motion.  That is within the time afforded under this Court's local rules for parties to file an opposition to a motion for leave to file an *amicus* brief.  *See* D.D.C. Local Civ. R. 7(o)(2).

*Second*, the Content Companies have a significant interest in protecting their highly confidential and competitively sensitive business information from disclosure.[1]  Courts have repeatedly held that intervention is warranted where, as here, the intervenor has a significant interest in protecting its confidential information.  *See, e.g.*, *United States v. AT&T Co.*, 642 F.2d 1285, 1291-93 (D.C. Cir. 1980) (interest in protecting privileged information from disclosure "strongly favor[s] allowing intervention"); *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 275 (D.D.C. 2014) ("[P]reventing the disclosure of commercially-sensitive and confidential information is a well-established interest sufficient to justify intervention under Rule 24(a)."); *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (holding that putative intervenor had interest in the subject of the action because the proposed remedy would result in disclosure of its trade secrets and confidential information); *see also Formulabs, Inc. v. Hartley Pen Co.*, 275 F.2d 52, 55-57 (9th Cir. 1960) (potential disclosure of putative intervenor's trade secrets grounds for intervention as of right); *Johnson v. Hankook Tire Mfg. Co.*, 2013 WL 664720, at *2 (N.D. Miss. Feb. 22, 2013) ("[I]t is clear that trade secret information is a sufficient interest to justify intervention in an action.").

As explained more fully in the attached opposition brief, the rates, terms, and conditions of the Content Companies' agreements with rival MVPDs that RCN/ACA propose be disclosed to AT&T/DIRECTV — a competing MVPD with which the Content Companies negotiate content licenses — are afforded the highest level of confidential treatment by courts and

---

[1] To intervene, the Content Companies need not demonstrate an interest in the underlying lawsuit as a whole.  Their substantial interest in this specific, collateral issue suffices.  *See United States v. AT&T Co.*, 642 F.2d 1285, 1291-92 (D.C. Cir. 1980).

agencies.  Because of the sensitivity of these materials, the D.C. Circuit refused in *CBS Corp. v. FCC*, 785 F.3d 699, to authorize the disclosure of the Content Companies' licensing agreements, even under a protective order.  The court concluded that the Trade Secrets Act, 18 U.S.C. § 1905, reflects Congress's judgment that the Content Companies' confidential and proprietary information should remain private "unless there's good cause to disclose it" and that "mere relevance" was not enough.  *CBS*, 785 F.3d at 706;  *accord In re Applications of Comcast Corp. & Time Warner Cable Inc.*, 29 FCC Rcd. 11864, 11870 (2014) (Content Companies' agreements "contain highly sensitive information that is central to [their] business strategies, including, among other things, pricing and business terms"); *In re Examination of Current Policy Concerning the Treatment of Confidential Info. Submitted to the Comm'n*, 13 FCC Rcd. 24816, 24852 (1998) ("[D]isclosure of programming contracts between [MVPDs] and programmers can result in substantial competitive harm to the information provider.").

   *Third*, the Content Companies' interest in protecting the confidentiality of their agreements will be impaired if they are not permitted to intervene.  The proposed brief explains why the agreements in question are competitively and commercially sensitive.  RCN/ACA ignore this sensitivity entirely in their passing reference to the Content Companies' confidential agreements.  *See* RCN/ACA Br. at 17.  Indeed, requiring MVPDs to disclose the Content Companies' confidential information to AT&T/DIRECTV in arbitration proceedings concerning Turner programming would create the potential for serious competitive harm.  *See CBS*, 785 F.3d at 701-03 (describing the competitive harms that would arise from requiring MVPDs to disclose the Content Companies' confidential agreements even under a protective order).

  Recognizing these important interests, courts have found impairment in similar cases. *See, e.g.*, *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (holding that putative

intervenors met the requirements for intervention because if their confidential documents were publicly disclosed "the cat is out of the bag" and their "ability to protect their confidentiality would be irrevocably impaired"); *100Reporters*, 307 F.R.D. at 279 (stating that disclosure of confidential information "frequently qualifies as impairment").

*Fourth*, none of the parties to this action can adequately protect the Content Companies' interest in keeping their proprietary business information confidential.  Proposed intervenors need only make a "minimal" showing of inadequacy, *In re Brewer*, 863 F.3d 861, 873 (D.C. Cir. 2017), and the "burden of proof rests on those resisting intervention," *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1390 (D.C. Cir. 1980).

The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736 & n.9 (collecting cases).  Here too the United States cannot adequately protect the Content Companies' right to confidentiality.  In responding to RCN/ACA's motion for leave to file an amicus brief, the United States "[took] no position" on whether their proposals would be helpful to the court but stated that the filing was "relevant to the issues to this case."  Pl.'s Resp. to Mot. for Leave by RCN, at 1-2 (ECF No. 131).  The United States did not specifically address the Compulsory Disclosure Proposal in their response to RCN/ACA's brief and did not seek to prevent any disclosure.  The Content Companies do not believe that compelled disclosure of their highly confidential agreements has any relevance whatsoever to the harms alleged in this proceeding, much less that such a disclosure would help to alleviate those harms.

Similarly, although Defendants have opposed RCN/ACA's motion for leave to file an amicus brief, their interests are not aligned with those of the Content Companies.  The portion of RCN/ACA's proposed remedy to which the Content Companies object would give

6

AT&T/DIRECTV access to the Content Companies' highly confidential deal terms with rival

MVPDs, information that AT&T/DIRECTV could use to its advantage in negotiating with each

of the Content Companies.  In any event, Defendants did not specifically address the

Compulsory Disclosure Proposal in their opposition to RCN/ACA's motion.

## II.      THE CONTENT COMPANIES SHOULD BE PERMITTED TO INTERVENE OR, ALTERNATIVELY, TO FILE THEIR OPPOSITION BRIEF AS *AMICI CURIAE*

Even if the Court denies the Content Companies' request to intervene as of right, it

should still permit the Content Companies to participate in this proceeding in some capacity so

that they may explain why this Court should not impose RCN/ACA's ill-conceived Compulsory

Disclosure Proposal, which would cause significant harm to parties not involved in this lawsuit.

To that end, the Content Companies should be permitted either to intervene for this limited

purpose or to file the enclosed brief as *amici*.

A court has discretion to grant a timely motion to intervene when an applicant "has a

claim or defense that shares with the main action a common question of law or fact" and the

proposed intervention will not unduly delay or prejudice the rights of the original parties.  Fed.

R. Civ. P. 24(b)(1)(B), (b)(3); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045

(D.C. Cir. 1998).  The D.C. Circuit has "eschewed strict readings of the phrase 'claim or

defense,' allowing intervention even in situations where the existence of any nominate 'claim' or

'defense' is difficult to find."  *Nat'l Children's Ctr.* at 1046 (internal quotation marks omitted).

The D.C. Circuit has also specifically construed Rule 24(b) "as an avenue for third parties 'to

have their day in court to contest the scope or need for confidentiality.'"  *Id.* (citing *Pansy v.*

*Borough of Stroudsburg*, 23 F.3d 772, 780 (3d Cir. 1994)).

The Content Companies satisfy Rule 24(b)'s lenient standard with respect to the limited

purpose for which they seek to intervene.  This motion is timely; the Content Companies have a

significant interest in protecting the confidentiality of their agreements with MVPDs that compete with AT&T/DIRECTV; and that interest will be irrevocably harmed if this Court adopts RCN/ACA's Compulsory Disclosure Proposal. No party to the litigation will suffer undue prejudice or delay if intervention is permitted. The Content Companies' intervention is limited to submission of the attached brief, which the Court may consider in conjunction with other submissions in making its final determination as to possible remedies.

Finally, even if the Court denies the Content Companies' request to intervene, they should nonetheless be permitted to file the attached brief as *amici curiae*. As explained, they have a substantial interest in protecting their confidential and competitively sensitive information from unwarranted disclosure and that interest is not adequately represented by any party. Moreover, the matters asserted in the proposed brief are relevant to this Court's disposition of this case and will assist the Court in understanding the competitive harms inherent in one of the remedies it is being asked to consider. *See District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 237 (D.D.C. 2011) (permitting proposed intervenors to participate as *amici curiae* because of their "relevant expertise and [ ] stated concern for the issues at stake").

## <u>CONCLUSION</u>

For the reasons set forth above, the Content Companies' motion to intervene should be granted, and this Court should accept the filing of the attached brief, either as a brief-in-intervention or brief *amici curiae*, opposing RCN/ACA's Compulsory Disclosure Proposal — an anticompetitive and wholly unjustified remedy that would require broad, unprecedented access to the Content Companies' competitively sensitive information in arbitration proceedings that neither involve the Content Companies nor concern access to their programming.

DATED:  May 29, 2018

Respectfully Submitted,

/s/ Kenneth S. Reinker
Kenneth S. Reinker (D.C. Bar # 999958)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
T: 202-974-1500
F: 202-974-1999
kreinker@cgsh.com

Attorneys for Proposed Intervenors
    Twenty-First Century Fox, Inc.,
    Univision Communications Inc., and
    Viacom International Inc.

/s/ Cody Shawn Harris (by permission)
Robert A. Van Nest (pro hac vice)
Cody Shawn Harris (pro hac vice)
KEKER VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111
T: 415-391-5400
F: 415-397-7188
rvannest@keker.com
charris@keker.com

Attorneys for Proposed Intervenor
    The Walt Disney Company

/s/ Kathryn M. Fenton (by permission)
Kathryn M. Fenton (D.C. Bar # 250944)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
T: 202-879-3746
F: 202-626-1700
kmfenton@jonesday.com

Attorneys for Proposed Intervenor
    CBS Corp.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

        *Plaintiff*,

        v.

AT&T, INC., DIRECTV GROUP
HOLDINGS, LLC, and TIME WARNER
INC.,

        *Defendants.*

Case No. 1:17-cv-02511-RJL

**CBS CORP., TWENTY-FIRST CENTURY FOX, INC., UNIVISION
COMMUNICATIONS INC., VIACOM INTERNATIONAL INC., AND
THE WALT DISNEY COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO
*AMICI CURIAE* BRIEF OF RCN TELECOM SERVICES, LLC, GRANDE
COMMUNICATIONS NETWORKS, LLC, WAVEDIVISION HOLDINGS, LLC, AND
AMERICAN CABLE ASSOCIATION; OR, IN THE ALTERNATIVE,
BRIEF AS *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... 3

INTRODUCTION & BACKGROUND .................................................................................... 4

ARGUMENT ............................................................................................................................. 6

I.      THE COMPULSORY DISCLOSURE PROPOSAL IS ANTICOMPETITIVE ................ 6

II.     THE CONTENT COMPANIES' PRICES AND AGREEMENTS ARE EXTREMELY COMPETITIVELY SENSITIVE AND CONFIDENTIAL AND SHOULD NOT BE SUBJECT TO DISCLOSURE ...................................................................................................................... 8

III.    THE COMPULSORY DISCLOSURE PROPOSAL IS ENTIRELY UNRELATED TO THE HARMS ASSERTED BY RCN/ACA ............................................................................ 10

CONCLUSION ........................................................................................................................ 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*CBS Corp. v. FCC*,
    785 F.3d 699 (D.C. Cir. 2015) ........................................................................................ 4, 8-9

*FTC v. Exxon Corp.*,
    636 F.2d 1336 (D.C. Cir. 1980) ............................................................................................. 9

*In re Applications of Comcast Corp. & Time Warner Cable Inc.*,
    29 FCC Rcd. 11864 (2014) ..................................................................................................... 8

*In re Examination of Current Policy Concerning the Treatment of Confidential Info.*
    *Submitted to the Comm'n*,
    13 FCC Rcd. 24816 (1998) ..................................................................................................... 8

*In re McWane, Inc.*,
    2012 WL 1155399 (F.T.C. Mar. 20, 2012) ........................................................................... 8

*Intel Corp. v. VIA Techs., Inc.*,
    198 F.R.D. 525 (N.D. Cal. 2000) ........................................................................................... 9

*Micro Motion, Inc. v. Kane Steel Co.*,
    894 F.2d 1318 (Fed. Cir. 1990) .............................................................................................. 9

*Suture Express, Inc. v. Cardinal Health 200, LLC*,
    2014 WL 6478077 (N.D. Ill. Nov. 18, 2014) ....................................................................... 9

*United States v. Container Corp. of Am.*,
    393 U.S. 333 (1969) ................................................................................................................ 7

*United States v. DirecTV Group Holdings, LLC*,
    No. 2:16-cv-08150-MWF-E (C.D. Cal. Oct. 2, 2017) ....................................................... 7-8

## INTRODUCTION & BACKGROUND

CBS Corp., Twenty-First Century Fox, Inc., Univision Communications Inc., Viacom International Inc., and The Walt Disney Company (collectively, the "Content Companies")[1] create and produce video programming.  Each Content Company negotiates content licensing agreements with distributors, such as Defendants AT&T, Inc., and DIRECTV Group Holdings, LLC ("AT&T/DIRECTV"), that set forth the pricing, carriage, and other terms under which distributors may deliver the Content Companies' programming to consumers through various distribution methods, such as cable, satellite, and the Internet.  These terms are among the most competitively sensitive, closely guarded, and confidential information in the video programming and television distribution business.

The sensitivity of this information is obvious.  Courts and agencies alike have time and again declared the Content Companies' licensing agreements with multichannel video programming distributors ("MVPDs") to be extraordinarily sensitive and entitled to the highest level of protection.  *See, e.g.*, *CBS Corp. v. FCC*, 785 F.3d 699, 706 (D.C. Cir. 2015).  Proposed *amici curiae* RCN and the American Cable Association (collectively, "RCN/ACA") are undoubtedly aware of this precedent, as they have unsuccessfully sought the anticompetitive disclosure of the Content Companies' highly confidential agreements in prior merger proceedings.[2]

---

[1] To the extent that this brief is treated as a brief *amici curiae*, pursuant to Local Rule 7(o)(5), the Content Companies affirm that no counsel for a party authored this brief in whole or in part and that no person other than *amici*, their members, or their counsel made any monetary contributions intended to fund the preparation or submission of this brief.

[2] *See, e.g.*, Br. of Intervenors Dish Network Corp. & Am. Cable Assoc. at 11, *CBS Corp. v. FCC*, 785 F.3d 699 (D.C. Cir. 2015) (No. 14-1242), 2015 WL 42646; Letter from Eric J. Branfman on behalf of RCN Telecom Services, LLC, *Applications of Comcast Corporation and Time Warner Cable Inc. Charter Communications Inc. and SpinCo, for Consent to Assign Licenses or Transfer*

RCN/ACA now seek judicially endorsed disclosure of the Content Companies' highly sensitive agreements, in direct contradiction to the antitrust laws and to the D.C. Circuit's determination in prior merger proceedings.  Specifically, in a short paragraph on page 17 of their 20-page brief, RCN/ACA urge the Court to require that, post-merger, (1) AT&T/DIRECTV be required to disclose to any rival MVPD that initiates an arbitration for access to Turner programming information on the rates, terms, and conditions on which Turner programming is licensed to other rival MVPDs,[3]  and (2) the rival MVPD be required to disclose to AT&T/DIRECTV — their direct competitor — "information with the rates, terms, and conditions in agreements for programming it acquires from other programmers"  (the "Compulsory Disclosure Proposal").  RCN/ACA Br. at 17.

In other words, RCN/ACA ask the Court to permit distribution competitors to engage in anticompetitive information sharing of prices and other competitively sensitive information about video programmers.  That would create more significant antitrust problems than it purports to solve and would go beyond any regime previously adopted in any similar merger in the industry.  This information sharing would involve the very same highly confidential agreements that the D.C. Circuit and the FCC have shielded from disclosure in past proceedings.  The Content Companies object to this proposed anticompetitive disclosure of their competitively sensitive, confidential information.

---

*Control of Licensees*, MB Docket No. 14-57 (Oct. 20, 2014), *available at* https://ecfsapi.fcc.gov/file/60000974762.pdf.

[3] To justify this radical request, RCN/ACA cite a purported "information asymmetry" in the arbitration procedure the FCC imposed as a condition to Comcast's merger with NBCUniversal. RCN/ACA Br. at 17 (citing *In re Applications of Comcast Corp., Gen. Elec. Co. & NBC Universal, Inc.*, 26 FCC Rcd. 4238, at Appendix A (2011)).  As explained below, this justification does not hold water.

The Content Companies take no position as to whether the transaction at issue should be permitted to proceed or whether any remedy is necessary in the event it is so permitted.  This submission is limited solely to the issue whether, if a remedy is imposed, it should include the Compulsory Disclosure Proposal raised by RCN/ACA.  To the extent the Court approves the transaction at issue subject to a remedy, that remedy should not permit this anticompetitive disclosure.

## ARGUMENT

The Compulsory Disclosure Proposal calls for the disclosure of some of the most competitively sensitive information in the video programming and television distribution business in arbitrations between AT&T/DIRECTV and competing MVPDs.  This Court should decline RCN/ACA's invitation to adopt that proposal as part of any remedy imposed in this proceeding for three reasons.  *First*, the Compulsory Disclosure Proposal is anticompetitive and would facilitate price fixing among competing MVPDs by granting them access to one another's pricing information and other competitively sensitive terms.  *Second*, by presumptively making the Content Companies' licensing agreements subject to disclosure in confidential arbitration proceedings to which the Content Companies would not be parties and of which they may not even be aware, the Compulsory Disclosure Proposal flies in the face of well-established precedent affording those materials the highest level of confidential treatment.  *Third*, RCN/ACA's proposed disclosure remedy is illogical on its own terms and wholly unrelated to addressing the purported "informational asymmetry."

## I.      THE COMPULSORY DISCLOSURE PROPOSAL IS ANTICOMPETITIVE

The content licensing agreements that RCN/ACA seek to disclose are some of the most closely guarded, competitively sensitive, and confidential documents in the video programming and television distribution business.  The agreements themselves reflect the heavily negotiated,

confidential terms on which each Content Company licenses its content.  They typically include detailed structures of the prices that distributors pay to Content Companies, as well as marketing, carriage, and other competitively important business terms.  Many agreements also include closely protected technical and security requirements.  The terms and conditions of each programmer's agreements frequently differ materially from one MVPD to another.

Because of the sensitivity of the information at stake, the Content Companies as well as the MVPDs maintain the highest level of confidentiality for these agreements.  The agreements include stringent, bargained-for mutual confidentiality provisions and are often subject to strict internal controls that limit even the Content Companies' own employees who can access them.

The exchange of this information among distributors would violate the antitrust laws. RCN/ACA's proposal would result in AT&T/DIRECTV learning the terms that rival MVPDs have negotiated with every other programmer.  This exchange of pricing among competitors would "chill[] the vigor of price competition."  *United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969).  In a competitive marketplace, buyers negotiate independently with sellers over pricing and other terms.  Here, RCN/ACA's proposal would allow competing buyers to join together and share information, facilitating anticompetitive price fixing and coordination.  The DOJ recently brought an enforcement action against MVPDs for exchanging information on negotiations with programmers, in which AT&T/DIRECTV was ordered not to "directly or indirectly" "Communicate Competitively Sensitive Information to any MVPD" or "Encourage or facilitate the Communication of Competitively Sensitive Information to or from any MVPD." Final Judgment at 4, *United States v. DirecTV Group Holdings, LLC*, No. 2:16-cv-08150-MWF-

E (C.D. Cal. Oct. 2, 2017).[4]  The FTC has also taken enforcement action against competitors for

sharing information.  *See, e.g.*, *In re McWane, Inc.*, 2012 WL 1155399 (F.T.C. Mar. 20, 2012).

## II.  THE CONTENT COMPANIES' PRICES AND AGREEMENTS ARE EXTREMELY COMPETITIVELY SENSITIVE AND CONFIDENTIAL AND SHOULD NOT BE SUBJECT TO DISCLOSURE

Courts and agencies familiar with these content licensing agreements have consistently

held that they are entitled to the highest level of protection from disclosure due to their

competitive and commercial sensitivity.  The FCC has long recognized that these agreements

"contain highly sensitive information that is central to [the Content Companies'] business

strategies, including, among other things, pricing and business terms" and "have historically

been treated as especially sensitive from a competitive standpoint."  *In re Applications of*

*Comcast Corp. & Time Warner Cable Inc.*, 29 FCC Rcd. 11864, 11865, 11870 (2014).  The FCC

also has explained that disclosure of competitively and commercially sensitive information to

third parties "can result in substantial competitive harm to the information provider."  *In re*

*Examination of Current Policy Concerning the Treatment of Confidential Info. Submitted to the*

*Comm'n*, 13 FCC Rcd. 24816, 24852 (1998).

In the past, when the FCC proposed to disclose these agreements to third parties *even*

*under a protective order* as part of its review of a proposed merger, the D.C. Circuit, interpreting

the Trade Secrets Act, overturned that decision because "the risk to the affected businesses

[would] not be worth it."  *CBS*, 785 F.3d at 706-07.  The D.C. Circuit stated that the Content

Companies would suffer very real and substantial harm if the terms of their agreements were

disclosed to other industry participants.  For example, if Disney's agreements with other MVPDs

---

[4] *See also* Competitive Impact Statement at 12, *United States v. DirecTV Group Holdings, LLC*, No. 2:16-cv-08150-MWF-E (C.D. Cal. Mar. 23, 2017) ("The proposed Final Judgment broadly prohibits Defendants from sharing strategic competitive information with direct competitors and thus protects the competitive process for negotiating video programming.").

were disclosed to AT&T/DIRECTV in the context of an arbitration for Turner content, it would be a "simple matter for, say, [a competitor like Turner] to peruse those documents, figure out what Disney charges for [its channel], and then price its own [] channel accordingly." *CBS*, 785 F.3d at 701.  The harm would not be limited to the Content Companies — RCN/ACA's proposal would facilitate price fixing and coordination that would harm competition and consumers.

RCN/ACA's suggestion that the agreements at issue would be exchanged "on a confidential basis" comes nowhere close to addressing these serious concerns.  First, information cannot be "unlearned" after it is received.[5]  Second, *any* disclosure of the Content Companies' competitively sensitive and confidential business information would be extremely damaging to their core business.  Third, proposed *amici*'s vague reference to "confidential" treatment cannot supplant the showing of necessity required to justify disclosure in the first place, *see CBS*, 785 F.3d at 706-07; *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990), and this information can hardly be *necessary* when programmers and MVPDs have been negotiating with asymmetric information for decades.  Fourth, a protective order does not eliminate the risks of inadvertent disclosure.  *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980); *see also Suture Express, Inc. v. Cardinal Health 200, LLC*, 2014 WL 6478077, at *6 (N.D. Ill. Nov. 18, 2014) ("[E]ven with a protective order in place, there is always the risk of inadvertent disclosure of confidential material, despite the best intentions of the Parties.").

Indeed, the Compulsory Disclosure Proposal expressly contemplates that AT&T/DIRECTV will be given access to the Content Companies' agreements with other

---

[5] Even sharing the Content Companies' agreements with industry experts or consultants in the course of arbitration would carry significant risks.  Once these experts see the Content Companies' confidential agreements, they cannot "unlearn" that information, and it could later be used against the Content Companies in future business dealings.  *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530-31 (N.D. Cal. 2000).

MVPDs, belying the notion that such an exchange would be "confidential" at all.  The competitive and business harm here is precisely that AT&T/DIRECTV will learn the terms of the Content Companies' agreements with rival MVPDs.  As an example, if AT&T/DIRECTV learned the terms of Fox's agreements with Comcast or Charter, AT&T/DIRECTV would gain an anticompetitive and unfair advantage in negotiating with Fox.  Fox, on the other hand, would have no visibility into AT&T/DIRECTV's agreements with other programmers.  Far from eliminating an information asymmetry, RCN/ACA's proposal would create new ones that would anticompetitively disadvantage the Content Companies.

These concerns are amplified in the context of a confidential arbitration proceeding in which the Content Companies are not participants and of which they may not even be aware. The Content Companies would have limited opportunity to object, to determine whether the information in question is truly necessary to any issue at hand, and otherwise to ensure their competitively sensitive and confidential information is appropriately protected.

## III.     THE COMPULSORY DISCLOSURE PROPOSAL IS ENTIRELY UNRELATED TO THE HARMS ASSERTED BY RCN/ACA

RCN/ACA's Compulsory Disclosure Proposal does nothing to address the harms that they assert.  RCN/ACA fail to explain how an information asymmetry that purportedly operates to the disadvantage of AT&T/DIRECTV's rival MVPDs could justify the *rival MVPD* providing AT&T/DIRECTV information on the prices, terms, and conditions that the rival MVPD has with *other programmers*.  RCN/ACA argue that rival MVPDs would be disadvantaged in submitting a viable final offer for Turner programming because they lack information on Turner's other MVPD deals.  But compelling the rival MVPD to share information with AT&T/DIRECTV does nothing to fill that gap — thus, it would result in the anticompetitive disclosure of the Content Companies' competitively sensitive information for no reason whatsoever.

Moreover, RCN/ACA fail to explain why information about other programmers would be relevant or necessary to a dispute over access to Turner programming.  If RCN/ACA is saying that if AT&T/DIRECTV had to disclose information on Turner programming AT&T/DIRECTV would then be disadvantaged by a lack of adequate information about other programmers' deals, there is no "information asymmetry" at all today — each party lacks information that the other possesses.  In any event, AT&T/DIRECTV has not asserted any such concerns.

## CONCLUSION

For the reasons set forth above, the Court should not adopt any remedy in this action that would require the disclosure of the Content Companies' highly confidential and competitively sensitive licensing terms.  Such an approach would be anticompetitive because it would facilitate price fixing and coordination to the detriment of consumers as well as substantially harm third parties — harms that courts and agencies alike have recognized as substantial in denying prior attempts to force the disclosure of the Content Companies' agreements.

DATED:  May 29, 2018                     Respectfully Submitted,


/s/ Kenneth S. Reinker
Kenneth S. Reinker (D.C. Bar # 999958)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
T: 202-974-1500
F: 202-974-1999
kreinker@cgsh.com

Attorneys for Proposed Intervenors
  *Twenty-First Century Fox, Inc.,*
  *Univision Communications Inc., and*
  *Viacom International Inc.*

/s/ Cody Shawn Harris (by permission)
Robert A. Van Nest (*pro hac vice*)
Cody Shawn Harris (*pro hac vice*)
KEKER VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111
T: 415-391-5400
F: 415-397-7188
rvannest@keker.com
charris@keker.com

Attorneys for Proposed Intervenor
  *The Walt Disney Company*

/s/ Kathryn M. Fenton (by permission)
Kathryn M. Fenton (D.C. Bar # 250944)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
T: 202-879-3746
F: 202-626-1700
kmfenton@jonesday.com

Attorneys for Proposed Intervenor
  *CBS Corp.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:17-cv-02511-RJL |
| AT&T INC., DIRECTV GROUP HOLDINGS, LLC, and TIME WARNER INC., | |
| *Defendants*. | |

**CERTIFICATE REQUIRED BY LCvR 26.1**

I, the undersigned, counsel of record for Univision Communications Inc., certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of Univision Communications Inc. which have any outstanding securities in the hands of the public.

Univision Communications Inc. is wholly owned by Broadcast Media Partners Holdings, Inc., which is wholly owned by Univision Holdings, Inc.  Grupo Televisa, S.A.B. indirectly holds a 10% or greater ownership interest in the stock of Univision Holdings, Inc. No publicly held company owns 10% or more of Univision Communications Inc. or any of its subsidiaries or affiliates.

These representations are made in order that judges of this Court may determine the need for recusal.

Dated: May 29, 2018
     Washington, D.C.

Attorney of Record for Proposed Intervenor
*Univision Communications Inc.*


/s/ Kenneth S. Reinker
Kenneth S. Reinker (D.C. Bar # 999958)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
T: 202-974-1500
F: 202-974-1999
kreinker@cgsh.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>AT&T INC., DIRECTV GROUP HOLDINGS, LLC, and TIME WARNER INC.,<br><br>*Defendants*. | Case No. 1:17-cv-02511-RJL |

## CERTIFICATE REQUIRED BY LCvR 26.1

I, the undersigned, counsel of record for <u>Viacom International Inc.</u>, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of <u>Viacom International Inc.</u> which have any outstanding securities in the hands of the public.

Viacom International Inc. is a wholly owned subsidiary of Viacom Inc.  Viacom Inc. is a public company with no parent corporation.  No publicly held company owns 10% or more of Viacom Inc.'s stock.

These representations are made in order that judges of this Court may determine the need for recusal.

Dated: May 29, 2018
       Washington, D.C.

Attorney of Record for Proposed Intervenor
*Viacom International Inc.*


<u>*/s/ Kenneth S. Reinker*</u>
Kenneth S. Reinker (D.C. Bar # 999958)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
T: 202-974-1500
F: 202-974-1999
kreinker@cgsh.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    *Plaintiff,*<br><br>        v.<br><br>AT&T, INC., DIRECTV GROUP<br>HOLDINGS, LLC, and TIME WARNER<br>INC.,<br><br>                    *Defendants.* | Case No. 1:17-cv-02511-RJL |

**[PROPOSED] ORDER GRANTING MOTION TO INTERVENE BY CBS CORP.,
TWENTY-FIRST CENTURY FOX, INC., UNIVISION COMMUNICATIONS INC.,
VIACOM INTERNATIONAL INC., AND THE WALT DISNEY COMPANY**

The Court, having considered the Motion to Intervene by CBS Corp., Twenty-First

Century Fox, Inc., Univision Communications Inc., Viacom International Inc., and The Walt

Disney Company, HEREBY ORDERS that the motion to intervene is GRANTED.


DATED this ___ day of _____, 2018


_____
The Honorable Richard J. Leon

## List of Persons to Be Notified

**Plaintiff**

UNITED STATES OF AMERICA

Alvin H. Chu
Pete Schwingler
Eric Welsh
Craig Conrath
U.S. Department of Justice
450 Fifth Street NW, Suite 7000
Washington, DC 20530
alvin.chu@usdoj.gov
peter.schwingler@usdoj.gov
eric.welsch@usdoj.gov
craig.conrath@usdoj.gov

**Defendants**

AT&T INC. and DIRECTV GROUP
HOLDINGS, LLC

Daniel M. Petrocelli
Katrina M. Robson
Kenneth R. O'Rourke
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
dpetrocelli@omm.com
krobson@omm.com
korourke@omm.com

Robert C. Walters
Michael L. Raiff
GIBSON DUNN & CRUTCHER
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3114
Facsimile: (214) 571-2932
rwalters@gibsondunn.com
mraiff@gibsondunn.com

TIME WARNER INC.

Daniel M. Petrocelli
Katrina M. Robson
Kenneth R. O'Rourke
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
dpetrocelli@omm.com
krobson@omm.com
korourke@omm.com

Christine A. Varney
Peter T. Barbur
Kevin J. Orsini
CRAVATH, SWAINE & MOORE LLP
825 8th Ave
New York, NY 10019
Telephone: (212) 474-1140
Facsimile: (212) 474-3700
cvarney@cravath.com
pbarbur@cravath.com
korsini@cravath.com

**Third-Parties**

CBS CORP.

Kathryn M. Fenton
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
T: 202-879-3746
F: 202-626-1700
kmfenton@jonesday.com

TWENTY-FIRST CENTURY FOX, INC.

Kenneth S. Reinker
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
T: 202-974-1500
F: 202-974-1999
kreinker@cgsh.com

UNIVISION COMMUNICATIONS INC.

Kenneth S. Reinker
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
T: 202-974-1500
F: 202-974-1999
kreinker@cgsh.com

VIACOM INTERNATIONAL INC.

Kenneth S. Reinker
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
T: 202-974-1500
F: 202-974-1999
kreinker@cgsh.com

THE WALT DISNEY COMPANY

Cody Shawn Harris
KEKER VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
T: 415-391-5400
F: 415-397-7188
charris@keker.com

RCN TELECOM SERVICES, LLC

Joseph Dale Wilson, III
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street, NW
Suite 400
Washington, DC 20007
T: 202-342-8400
F: 202-342-8451
jwilson@kelleydrye.com

GRANDE COMMUNICATIONS
NETWORKS, LLC

Joseph Dale Wilson, III
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street, NW
Suite 400
Washington, DC 20007
T: 202-342-8400
F: 202-342-8451
jwilson@kelleydrye.com

WAVEDIVISION HOLDINGS, LLC

Joseph Dale Wilson, III
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street, NW
Suite 400
Washington, DC 20007
T: 202-342-8400
F: 202-342-8451
jwilson@kelleydrye.com

AMERICAN CABLE ASSOCIATION

Joseph Dale Wilson, III
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street, NW
Suite 400
Washington, DC 20007
T: 202-342-8400
F: 202-342-8451
jwilson@kelleydrye.com

CINEMOI NORTH AMERICA

Laurence Michael Sandell
MEI & MARK LLP
P.O. Box 65981
Washington, DC 20035-5981
T: 888-860-5678 x717
F: 888-706-1173
lsandell@meimark.com